**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**CASE NO. 1:25-CV-23652-GAYLES**

JERREL KENEMORE, *et al.*,

          *Plaintiffs*,

   v.

NICOLÁS MADURO MOROS, *et al.*,

          *Defendants*.

Case No. 1:25-cv-23652-Gayles

**MOTION TO DISMISS COMPLAINT WITH PREJUDICE**
**BY PETRÓLEOS DE VENEZUELA, S.A. AND**
**CORPORACIÓN VENEZOLANA DEL PETRÓLEO**

**WHITE & CASE**
701 Thirteenth Street, NW
Washington, DC 20005

February 10, 2026

*Counsel for PDVSA and CVP*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ............................................................................................................... 3

I.      Political Crisis In Venezuela.................................................................................. 3

II.     Factual and Procedural History.............................................................................. 5

ARGUMENT ................................................................................................................... 6

I.      The Court Should Dismiss The Complaint For Lack Of Subject-Matter Jurisdiction
        Under The FSIA .................................................................................................... 6

II.     The Court Should Dismiss The Complaint For Lack Of Personal Jurisdiction........ 9

III.    The Court Should Dismiss The Complaint For Failure To State A Claim ............. 10

        A.      Plaintiffs Fail To State A Claim Under The ATA ..................................... 10

        B.      Plaintiffs Fail To State An ATA Claim Under State Law ......................... 15

        C.      Plaintiffs Fail To State A Claim For Conspiracy Or Civil RICO ............. 15

IV.     The Court Should Dismiss The Complaint For Improper Venue .......................... 16

V.      The Court Should Dismiss The Complaint For Insufficient Service Of Process ... 17

CONCLUSION............................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) ........................................................................................................ 16

*Argentine Republic v. Amerada Hess Shipping Corp.*,
    488 U.S. 428 (1989) .......................................................................................................... 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................................ 10

*Ashley v. Deutsche Bank Aktiengesellschaft*,
    144 F.4th 420 (2d Cir. 2025) ......................................................................................... 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................................ 10

*Boim v. Holy Land Found.*,
    549 F.3d 685 (7th Cir. 2008) .................................................................................... 13, 14

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
    581 U.S. 170 (2017) .......................................................................................................... 7

*Butler v. Sukhoi Co.*,
    579 F.3d 1307 (11th Cir. 2009) ....................................................................................... 6

*Caballero v. Fuerzas Armadas Revolucionarias de Colombia*,
    2021 WL 1884110 (W.D.N.Y. May 11, 2021) ................................................................ 7

*Commodities & Minerals Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*,
    2017 WL 11625759 (S.D. Fla. Apr. 4, 2017) ................................................................ 20

*Fields v. Twitter*,
    881 F.3d 739 (9th Cir. 2018) .................................................................................... 12, 14

*Fraser v. Smith*,
    594 F.3d 842 (11th Cir. 2010) ................................................................................... 9, 10

*Freeman v. HSBC Holdings PLC*,
    57 F.4th 66 (2d Cir. 2023) ............................................................................................. 15

*G&A Strategic Invs. I LLC v. Petróleos de Venezuela, S.A.*,
    788 F. Supp. 3d 616 (S.D.N.Y. 2025) ............................................................................. 5

*Halberstam v. Welch*,
    705 F.2d 472 (D.C. App. 1983) ..................................................................................... 15

*Hemi Group, LLC v. City of New York*,
   559 U.S. 1 (2010) ................................................................................................ 16

*Honickman v. BLOM Bank SAL*,
   6 F.4th 487 (2d Cir. 2021) .................................................................................. 13

*In re Terrorist Attacks on September 11, 2001*,
   298 F. Supp. 3d 631 (S.D.N.Y. 2018) ........................................................ 7, 8, 10

*In re Terrorist Attacks on September 11, 2001*,
   740 F. Supp. 2d 494 (S.D.N.Y. 2010) ............................................................... 15

*Isaac Indus., Inc. v. Petroquimica de Venezuela, S.A.*,
   2022 WL 820376 (S.D. Fla. Mar. 1, 2022) .......................................................... 7

*Jenkins Brick Co. v. Bremer*,
   321 F.3d 1366 (11th Cir. 2003) ......................................................................... 17

*Jiménez v. Palacios*,
   250 A.3d 814 (Del. Ch. 2019) .............................................................................. 4

*Keeton v. Hustler Mag., Inc.*,
   465 U.S. 770 (1984) .............................................................................................. 9

*Kemper v. Deutsche Bank AG*,
   911 F.3d 383 (7th Cir. 2018) .............................................................................. 13

*Linde v. Arab Bank, PLC*,
   882 F.3d 314 (2d Cir. 2018) ............................................................................... 11

*LS Energia Inc. v. Corporacion Electrica National, S.A.*,
   2023 WL 122196 (S.D. Fla. Jan. 6, 2023) .................................................... 7, 19

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
   863 F.3d 96 (2d Cir. 2017) ................................................................................. 16

*Newman v. Associated Press*,
   758 F. Supp. 3d 1357 (S.D. Fla. 2024) ....................................................... *passim*

*Newman v. Associated Press*,
   801 F. Supp. 3d 1334 (S.D. Fla. 2025) ........................................................ 12, 14

*O'Neill v. Al Rajhi Bank*,
   714 F.3d 118 (2d Cir. 2013) ............................................................................... 12

*OBB Personenverkehr AG v. Sachs*,
   577 U.S. 27 (2015) ................................................................................................ 6

*Oldfield v. Pueblo de Bahia Lora, S.A.*,
   558 F.3d 1210 (11th Cir. 2009) ........................................................................... 9

iii

*Owens v. BNP Paribas, S.A.*,
  897 F.3d 266 (D.C. Cir. 2018) ........................................................................ 12

*PDVSA US Litig. Tr. v. LukOil Pan Am's LLC*,
  65 F.4th 556 (11th Cir. 2023) ................................................................... *passim*

*Pinson v. Rumsfeld*,
  192 F. App'x 811 (11th Cir. 2006) .................................................................. 17

*Republic of Sudan v. Harrison*,
  587 U.S. 1 (2019) ...................................................................................... 18, 19

*Rothstein v. UBS AG*,
  708 F.3d 82 (2d Cir. 2013) ....................................................................... 12, 14

*Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venezuela*,
  23 F.4th 1036 (D.C. Cir. 2022) ...................................................................... 19

*Saudi Arabia v. Nelson*,
  507 U.S. 349 (1993) ......................................................................................... 7

*Tex. Trading and Milling Corp. v. Federal Republic of Nigeria*,
  647 F.2d 300 (2d Cir. 1981), *cert. denied*, 454 U.S. 1148 (1982) ...................... 9

*Twitter, Inc. v. Taamneh*,
  598 U.S. 471 (2023) ....................................................................................... 12

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
  486 U.S. 694 (1988) ....................................................................................... 18

*Walden v. Fiore*,
  571 U.S. 277 (2014) ................................................................................... 9, 10

*Waldman v. Palestine Liberation Organization*,
  835 F.3d 317 (2d Cir. 2016) ........................................................................... 11

*Water Splash, Inc. v. Menon*,
  581 U.S. 271 (2017) ....................................................................................... 18

*Watson v. Kingdom of Saudi Arabia*,
  2024 WL 1344643 (N.D. Fla. Mar. 30, 2024) ............................................ 8, 10

*Weiss v. Nat'l Westminster Bank PLC*,
  768 F.3d 202 (2d Cir. 2014) ........................................................................... 11

*Weldon v. Ramstad-Hvass*,
  512 F. App'x 783 (10th Cir. 2013) .................................................................. 17

*Wultz v. Islamic Republic of Iran*,
  755 F. Supp. 2d 1 (D.D.C. 2010) .................................................................... 11

## STATUTES AND RULES

18 U.S.C. § 1603(b) ............................................................................................................. 7

18 U.S.C. § 2331(1) ........................................................................................................... 11

18 U.S.C. § 2337 ............................................................................................... 7, 8, 10, 15

28 U.S.C. § 1330 ................................................................................................................ 1, 9

28 U.S.C. § 1391(f) ............................................................................................. 2, 3, 16, 17

28 U.S.C. § 1604 ................................................................................................................. 7

28 U.S.C. § 1605B ...................................................................................................... *passim*

28 U.S.C. § 1608 ........................................................................................................ *passim*

Fed. R. Civ. P. 4 ................................................................................... 2, 18, 19, 20

Petróleos de Venezuela, S.A. ("PDVSA")—an "agency or instrumentality of a foreign state" immune from the jurisdiction of courts in the United States under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330(a), 1441(d), 1602–1611 ("FSIA")—and Corporación Venezolana del Petróleo ("CVP"), a wholly owned subsidiary of PDVSA, move to dismiss with prejudice all claims against them, under Rules 12(b)(1)–(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

PDVSA and CVP, as owned by the U.S.-recognized government of the Bolivarian Republic of Venezuela and governed by the Ad Hoc Administrative Board ("Ad Hoc Board") established by the U.S.-recognized government, condemn the illegitimate Maduro regime's conduct alleged in the Complaint. But neither PDVSA nor CVP is responsible for those acts. Nor does this Court have jurisdiction over either PDVSA or CVP for this action. The Complaint makes only irrelevant, tangential, and conclusory allegations against PDVSA and CVP. And it does not allege any conduct by either PDVSA or CVP that caused Plaintiffs' injuries. The Complaint should thus be dismissed with prejudice for the following reasons:

*First*, PDVSA, as Venezuela's wholly owned national oil company, is an "agency or instrumentality of a foreign state" under the FSIA. PDVSA is thus presumptively immune from the jurisdiction of courts in the United States unless Plaintiffs establish an exception to that immunity, which they have not. The Complaint does not even allege that any exception to immunity applies. Nor could it, because none of the FSIA exceptions applies to Plaintiffs' claims as a matter of law. As a foreign state, PDVSA is immune from actions, like this one, brought under the Anti-Terrorism Act, 18 U.S.C. § 2333 ("ATA"). The only exception to that immunity that might apply, 28 U.S.C. § 1605B (the "terrorism exception"), is unavailable here, because the Complaint does not meet its threshold requirements—including because Plaintiffs'

injuries occurred in Venezuela, as did the alleged kidnappings and torture by the Maduro regime. The Court thus lacks subject-matter jurisdiction.

*Second*, to obtain personal jurisdiction over a foreign state like PDVSA, Plaintiffs must establish both proper service of process and an exception to sovereign immunity under the FSIA. Plaintiffs have established neither. Personal jurisdiction is further lacking as to both PDVSA and CVP because Plaintiffs do not allege conduct by either entity with any connection to the United States that would render the exercise of personal jurisdiction consistent with due process.

*Third*, the Complaint fails to state a claim for relief against either PDVSA or CVP under the ATA, the Florida ATA, or Plaintiffs' conspiracy or Civil RICO theories. In particular, the Complaint does not allege facts to support a plausible inference that any alleged conduct by PDVSA or CVP caused Plaintiffs' injuries. Because the Complaint fails to sufficiently plead any element of any cause of action, it must be dismissed under Rule 12(b)(6).

*Fourth*, the Complaint must be dismissed for improper venue, because Plaintiffs fail to plead that a "substantial part of the events or omissions giving rise to the claim occurred" in this district, as required under 28 U.S.C. § 1391(f)(1). To the contrary, the events giving rise to Plaintiffs' claims occurred in Venezuela.

*Fifth*, the FSIA contains the exclusive and comprehensive framework under which a foreign state and its agencies and instrumentalities must be served. Plaintiffs were thus *required* to serve PDVSA under the mandatory, hierarchical service provisions set forth in 28 U.S.C. § 1608(b). *See* Fed. R. Civ. P. 4(j)(1). But Plaintiffs failed to do so. Plaintiffs also failed to serve CVP in compliance with the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Service Convention"), Nov. 15, 1965, 20 U.S.T. 361. PDVSA and CVP respectfully maintain that the methods of alternative service that Plaintiffs requested, and this Court granted, were improper. Besides, Plaintiffs

failed to perfect service even under those methods, because the summonses that Plaintiffs purported to serve were deficient.

Given the lack of jurisdiction and fatal pleading defects, it would be futile to allow Plaintiffs to attempt proper service, amend their Complaint, or transfer to the U.S. District Court for the District of Columbia (the default venue for suits against foreign states under 28 U.S.C. § 1391(f)(4)). Dismissal with prejudice is thus required.

## BACKGROUND

### I.     Political Crisis In Venezuela

Undersigned counsel appears at the behest of PDVSA's Ad Hoc Board, appointed by the U.S.-recognized Venezuelan government. *See* Decl. of Horacio Francisco Medina Herrera ¶¶ 2–20 (February 2, 2026) (attached as Ex. 1) ("Medina Decl."). As Plaintiffs allege, PDVSA is Venezuela's wholly owned national oil company, and CVP is PDVSA's wholly owned subsidiary. Compl. ¶¶ 22, 23; *see also* Medina Decl. ¶ 1. The Ad Hoc Board is charged with protecting and preserving the assets of both PDVSA and CVP from being usurped by Nicolás Maduro's illegitimate regime. Medina Decl. ¶¶ 4–20.

After Maduro's self-proclaimed victory in the sham 2018 Venezuelan presidential election, Venezuela's democratically elected legislature, the 2015 National Assembly, declared Maduro's presidency illegitimate, and on January 23, 2019, established an Interim Government under Venezuela's Constitution. *See id.* ¶¶ 4–5; *see also Venezuela: A Democratic Crisis*, U.S. Dep't of State, https://2017-2021.state.gov/a-democratic-crisis-in-venezuela/. President Trump immediately recognized the Interim Government. *PDVSA U.S. Litig. Tr. v. LukOil Pan Am's LLC*, 65 F.4th 556, 561 (11th Cir. 2023). The United States has continually reaffirmed its support for the U.S.-recognized opposition government of Venezuela. The United States explained recently that "since January 23, 2019, the United States has not recognized Maduro and his associates as the government of Venezuela," and, instead, "the United States recognizes

3

the 2015 National Assembly as the government of Venezuela." Ltr. from Amb. Michael G. Kozak, *Petróleos de Venezuela, S.A. v. MUFG Union Bank, N.A.*, No. 19-cv-10023 (S.D.N.Y. filed Aug. 29, 2025), ECF 393-1; *accord* U.S. Statement of Interest 1, *MUFG Union Bank, N.A.*, No. 19-cv-10023 (S.D.N.Y. filed Aug. 29, 2025), ECF 393 (affirming "recognition of, and firm support for, the 2015 National Assembly of Venezuela as the government of Venezuela"); *U.S. Policy Towards Venezuela: Hearing Before the Subcomm. on Foreign Rels.*, 119th Cong. (2026) (statement of Marco A. Rubio, Secretary of State), at 2:26:00, https://www.foreign.senate.gov/hearings/us-policy-towards-venezuela (declaring on behalf of the United States "we don't recognize [the regime-aligned] government. We recognize the 2015 National Assembly.").

In response to the Maduro regime's unlawful conduct, and to protect and preserve the assets of the Republic for the Venezuelan people, the 2015 National Assembly enacted the Statute to Govern a Transition to Democracy. *See* Medina Decl. ¶¶ 4–5; *see also Jiménez v. Palacios*, 250 A.3d 814, 824, 839–41 (Del. Ch. 2019), *aff'd*, 237 A.3d 68 (Del. 2020) (holding that the 2015 National Assembly's creation of PDVSA's Ad Hoc Board under Democracy Transition Statute was valid). Consistent with that statute, the 2015 National Assembly established the Ad Hoc Board of PDVSA. Medina Decl. ¶ 6–7. Since 2019, PDVSA has been under the de jure control of the Ad Hoc Board, which the U.S.-recognized government of Venezuela established to oversee PDVSA's affairs by Venezuelan laws and decrees. *See id.* ¶¶ 4–18; *see also LukOil*, 65 F.4th at 563 (holding that courts "cannot question the validity of then-President Guaidó's appointment of an alternative board of directors" for PDVSA). In support of the Interim Government, the United States protectively blocked PDVSA's assets to prevent the illegitimate Maduro regime from usurping those assets and to "preserve" them for the Venezuela people. U.S. Dep't of Treasury, *Treasury Sanctions Venezuela's State-Owned Oil Company Petroleos de Venezuela, S.A.* (Jan. 28, 2019),

https://home.treasury.gov/news/press-releases/sm594; *see also G&A Strategic Invs. I LLC v. Petróleos de Venezuela, S.A.*, 788 F. Supp. 3d 616, 624 (S.D.N.Y. 2025) (finding "[t]he primary goal of the Ad Hoc Board was to protect PDVSA's assets abroad").

From 2019 through 2023, CVP was likewise under the control of an ad hoc board established by the 2015 National Assembly. Medina Decl. ¶¶ 12–17. In 2023, the CVP Ad Hoc Board was not reauthorized, and since 2023, PDVSA's Ad Hoc Board has also been charged with controlling and protecting CVP's assets. Medina Decl. ¶¶ 14–17.

## II.    Factual and Procedural History

Plaintiffs filed their Complaint on August 14, 2025, alleging that they or their family members were kidnapped and tortured in Venezuela by Maduro's regime and under his orders. The Complaint seeks to hold Maduro and various members of his regime liable for Plaintiffs' injuries. The Complaint acknowledges that the Maduro regime is "illegitimate," and that the United States recognizes the 2015 National Assembly as the "only legitimate political authority in Venezuela." Compl. ¶ 42; *see also id.* ¶¶ 20, 47, 51.

The Complaint also seeks to hold PDVSA and CVP liable for Plaintiffs' injuries, based on allegations that Maduro and his cronies "used" PDVSA and CVP to generate funds to prop up their illegitimate regime, including by embezzling money from them (¶¶ 165–170, 179–186), misappropriating their resources for drug trafficking (¶¶ 153–164), and illegally appointing corrupt family members to supposed leadership positions, from which they would launder funds—all for the benefit of Maduro and to the detriment of PDVSA and CVP themselves (¶¶ 149, 156).

About three months after filing their Complaint, Plaintiffs filed an expedited motion for alternate service under 28 U.S.C. § 1608(b) (as to PDVSA) and Rule 4(f)(3) (as to CVP and other Defendants). Mot. (Nov. 18, 2025), ECF 13. Plaintiffs told the Court that "Plaintiffs will serve PDVSA in accordance with the FSIA." *Id.* at 16. Yet without first attempting to complete

service under the FSIA's strict, hierarchical requirements, Plaintiffs requested, and the Court granted, permission to serve PDVSA under 28 U.S.C. § 1608(b)(3)(C) by (1) social media messages directed to members of the illegitimate Maduro regime, (2) social media messages to the Ad Hoc Board Chairman, and (3) undersigned counsel. *Id*. at 9; Order (Dec. 5, 2025), ECF 14. Plaintiffs purported to serve PDVSA via social media messages on December 10, 2025. *See* Aff. (Dec. 19, 2025), ECF 17. Despite the fundamental defects in the manner of service, Plaintiffs' purported service packet was also technically defective as it did not include a Spanish translation of the summons, as required under 28 U.S.C. § 1608(b)(3). *See* Ex. 2 (Plaintiffs' purported service packet on PDVSA). The summons also demanded a response within twenty-one days, even though, as an agency or instrumentality of a foreign state, PDVSA is entitled to sixty days to respond. 28 U.S.C. § 1608(d).

Plaintiffs also requested, and the Court granted, permission to serve CVP via social media messages directed to members of the illegitimate Maduro regime and to members of the defunct CVP Ad Hoc Board. Mot. 8–9; *see also* Medina Decl. ¶¶ 14–16 (explaining that CVP Ad Hoc Board has been defunct since 2023). Plaintiffs' purported service packet on CVP likewise did not include a translated summons. *See* Ex. 3 (Plaintiffs' purported service packet on CVP).

### ARGUMENT

### I.   The Court Should Dismiss The Complaint For Lack Of Subject-Matter Jurisdiction Under The FSIA

The FSIA provides the "sole basis" for establishing jurisdiction over a foreign state, including over an agency or instrumentality of a foreign state. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989); *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 30–31 (2015); *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1312 (11th Cir. 2009). The Complaint concedes (at ¶ 22) that PDVSA is "state-owned." Likewise, several courts have recognized that PDVSA is "state owned" and thus a "foreign state." *See, e.g.*, *LukOil*, 65 F.4th

at 563; *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, 2021 WL 1884110, at *5 (W.D.N.Y. May 11, 2021); *LS Energia Inc. v. Corporacion Electrica Nacional S.A.*, 2023 WL 122196, at *1 (S.D. Fla. Jan. 6, 2023). PDVSA is indisputably a "foreign state" under the FSIA. *See* 28 U.S.C. § 1603(b).

Under the FSIA, foreign states, including their agencies and instrumentalities, are "presumptively immune" from the jurisdiction of U.S. courts. *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). Unless Plaintiffs "show (and not just arguably show)" that one of the FSIA's specified exceptions to sovereign immunity applies, this Court lacks subject-matter jurisdiction over PDVSA. *See Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 175–76, 187 (2017) (citing 28 U.S.C. § 1604).

Because Plaintiffs do not plead any exception to foreign sovereign immunity, much less establish that one exists, the Complaint must be dismissed for lack of subject-matter jurisdiction as to PDVSA. *See* Compl. ¶ 32 (failing to include FSIA as basis for subject-matter jurisdiction); *see also Isaac Indus. v. Petroquimica de Venez., S.A.*, 2022 WL 820376, at *14 (S.D. Fla. Mar. 1, 2022) (dismissing complaint for failing to "plead the FSIA as the Court's basis for subject matter jurisdiction" and failing to "specifically invoke any of the FSIA's exceptions to foreign sovereign immunity"), *adopted*, 2022 WL 1203004 (S.D. Fla. Apr. 21, 2022).

Even if invoked, no FSIA exception could apply here. Because Plaintiffs' claims are brought under the ATA, the only possible exception to PDVSA's sovereign immunity is the "terrorism exception" provided by § 1605B of the FSIA. *See* 18 U.S.C. § 2337(2) (prohibiting actions under the ATA against "a foreign state" or "an agency of a foreign state"); *see also In re Terrorist Attacks on September 11, 2001*, 298 F. Supp. 3d 631, 642 & n.6 (S.D.N.Y. 2018). Before enactment of the Justice Against Sponsors of Terrorism Act ("JASTA"), Pub. L. No. 114-222, 130 Stat. 852 (2016) (codified at 28 U.S.C. § 1605B), "the ATA had explicitly barred

claims brought thereunder from being asserted against foreign states." *In re Terrorist Attacks*, 298 F. Supp. 3d at 642 & n.6 (citing 18 U.S.C. § 2337). JASTA now permits ATA claims against foreign states, but only if Plaintiffs otherwise meet § 1605B's requirements. *Id.* (citing 28 U.S.C. § 1605B(c)); *see also Watson v. Kingdom of Saudi Arabia*, 2024 WL 1344643, at *6 n.16 (N.D. Fla. Mar. 30, 2024).

Section 1605B only withdraws sovereign immunity in ATA cases involving "physical injury . . . or death *occurring in the United States* and caused by[] (1) an act of international terrorism *in the United States*; and (2) a tortious act or acts of the foreign state, or of any official, employee, or agent of that foreign state while acting within the scope of his or her office, employment, or agency, regardless where the tortious act or acts of the foreign state occurred." 28 U.S.C. § 1605B(b) (emphases added); *see also Watson*, 2024 WL 1344643, at *6 & n.16. The Complaint meets neither of these requirements.

All of Plaintiffs' alleged injuries, and the alleged acts of terrorism that caused their injuries (i.e., the kidnapping and torture of Plaintiffs by the Maduro regime), took place in Venezuela. *See* Compl. ¶¶ 64–130. Because Plaintiffs cannot clear this threshold requirement to withdraw PDVSA's immunity, this Court need look no further.

But the Complaint also fails to allege that any tortious acts that caused their injuries were committed by an "official, employee, or agent" of Venezuela "while acting within the scope of his or her office, employment, or agency." 28 U.S.C. § 1605B(b). That is because no member of the illegitimate Maduro regime is an official, employee, or agent of the U.S.-recognized, legitimate government of Venezuela. Indeed, the Complaint alleges that the Maduro regime is "illegitimate," and not recognized by the United States. *See* Compl. ¶¶ 41–51. To attribute the alleged suit-related conduct of the "illegitimate" Maduro regime to PDVSA would implicitly recognize Maduro's claim to control the government of Venezuela and thus violate the political question doctrine. *See LukOil*, 65 F.4th at 563–64 (holding that political

8

questions are not Article III cases or controversies), *cert. denied*, 144 S. Ct. 343 (2023). Because the power to "identify the legitimate political leadership of a foreign country" belongs exclusively to the U.S. President, the question of the illegitimate Maduro regime's purported interests in and control over PDVSA is nonjusticiable. *See id*. at 562–64. The Complaint concurs, stating, "[t]he judicial branch is bound to accept the President's statement that the 2015 National Assembly, not the Maduro government, is the legitimate political authority in Venezuela." Compl. ¶ 42 (alteration in original) (quoting *LukOil*, 65 F.4th at 563).

## II.   The Court Should Dismiss The Complaint For Lack Of Personal Jurisdiction

To establish personal jurisdiction, the FSIA requires both proper service of process under § 1608 and satisfaction of an FSIA exception to sovereign immunity. *See* 28 U.S.C. § 1330(b). Because the Complaint does not plead any sovereign-immunity exception, much less show that any exception exists (*supra* § I), and Plaintiffs failed to serve PDVSA under § 1608 (*infra* § V), the Complaint must be dismissed for lack of personal jurisdiction.

Agencies and instrumentalities of foreign states, like PDVSA, are also entitled to due process protection under the U.S. Constitution, as is CVP. *See Tex. Trading and Milling Corp. v. Fed. Republic of Nigeria*, 647 F.2d 300, 308 (2d Cir. 1981) (holding that 28 U.S.C. § 1330(b) "cannot create personal jurisdiction where the Constitution forbids it"), *cert. denied*, 454 U.S. 1148 (1982). Courts assess whether personal jurisdiction comports with due process by analyzing "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)). For that relationship to support an "exercise [of] jurisdiction consistent with due process," a "substantial connection" must exist between the "defendant's suit-related conduct" and the forum. *Id*. And the defendant's contacts with the forum "must be a 'but-for' cause" of the plaintiff's injuries. *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (quoting *Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1222–23 (11th Cir. 2009)).

The Complaint does not allege facts to support a plausible inference that any purported conduct by PDVSA or CVP in the United States had a "substantial connection" to Plaintiffs' injuries, much less that it was a "but-for" cause of those injuries. *Walden*, 571 U.S. at 284; *Fraser*, 594 F.3d at 850. Again, all the alleged tortious conduct relating to the kidnapping and torture of Plaintiffs by the Maduro regime (none of which even allegedly involved PDVSA or CVP), and all Plaintiffs' alleged injuries, occurred in Venezuela.

## III.    The Court Should Dismiss The Complaint For Failure To State A Claim

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court may consider only well-pleaded factual allegations and must ignore "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by merely conclusory statements." *Id.* (citing *Twombly*, 550 U.S. at 555).

### A.    Plaintiffs Fail To State A Claim Under The ATA

The Complaint cannot state an ATA claim against PDVSA, because the statute makes clear that "[n]o action shall be maintained under" the ATA against "an agency of a foreign state" like PDVSA. 18 U.S.C. § 2337. As discussed above, while § 1605B permits U.S. nationals to assert ATA claims against foreign states, the statutory bar to bringing an ATA action is not lifted unless Plaintiffs meet § 1605B's requirements. *In re Terrorist Attacks*, 298 F. Supp. 3d at 642 n.6 (citing 28 U.S.C. § 1605B(c)); *see also Watson*, 2024 WL 1344643, at *6 & n.16. As discussed above, the Complaint does not meet those threshold requirements.

*First*, the alleged kidnapping and torture by the Maduro regime took place in Venezuela, as did Plaintiffs' alleged injuries. *See supra* § I. *Second*, neither Maduro nor his cronies were state officials acting under their authority as state officials, because the Complaint alleges—correctly—that Maduro is "illegitimate," and the United States *only* recognizes the

2015 National Assembly as the legitimate government. *See id.* Because the Complaint fails to overcome the ATA's statutory bar to file this action, this Court must dismiss Plaintiffs' claims against PDVSA.

Threshold defects aside, Plaintiffs' conclusory allegations fail to establish any element of an ATA primary-liability claim against either PDVSA or CVP. To state an ATA primary-liability claim, a plaintiff must allege facts that the defendant (1) *itself* "directly committed an 'act of international terrorism,'" (2) with "the requisite mental state," and (3) "proximately caused [the plaintiff's] injuries." *Newman v. Associated Press*, 758 F. Supp. 3d 1357, 1375–81 (S.D. Fla. 2024) (dismissing ATA complaint for failure to state a claim); *see also, e.g.*, *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 335 (2d Cir. 2016) ("To prevail under the ATA, a plaintiff must prove three formal elements: unlawful *action*, the requisite *mental state*, and *causation*." (quotation omitted)).

To plead an "act of international terrorism," a plaintiff must allege, among other things, that the defendant *itself* committed "violent acts or acts dangerous to human life." 18 U.S.C. § 2331(1); *see also, e.g.*, *Newman*, 758 F. Supp. 3d at 1375 (dismissing where AP's freelance photographers' alleged connections to Hamas did not involve "violent acts or acts dangerous to human life"); *Linde v. Arab Bank, PLC*, 882 F.3d 314, 326 (2d Cir. 2018) (holding that "provision of material support to a terrorist organization does not invariably equate to an act of international terrorism").

To plead the requisite mental state, a plaintiff must allege that the defendant's purported support was "with the specific knowledge or intent" to commit terrorism. *Newman*, 758 F. Supp. 3d at 1378–79; *see also Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202, 207 (2d Cir. 2014) (holding that § 2333(a) "incorporates the knowledge requirement from [the alleged predicate act]"); *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 42 (D.D.C. 2010) (same). Because Plaintiffs do not (and cannot) allege that PDVSA or CVP provided material support

11

to a designated foreign terrorist organization, they must meet the "high[er] bar" of pleading "knowing or intentional action to aid or encourage terrorist acts under § 2339A." *Newman v. Associated Press*, 801 F. Supp. 3d 1334, 1350 (S.D. Fla. 2025) (distinguishing between "high bar" required to plead scienter under § 2339A and "lower scienter standard for § 2339B").

To plead proximate cause, a plaintiff must allege that the defendant's alleged acts were a "'substantial factor' in the sequence of events leading to [their] injuries and that such injuries were 'reasonably foreseeable or anticipated' as a natural result of the defendant's conduct." *Newman*, 758 F. Supp. 3d at 1380 (quoting *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 273 (D.C. Cir. 2018)); *see also O'Neill v. Al Rajhi Bank*, 714 F.3d 118, 123 (2d Cir. 2013) (dismissing for failure to state a claim where, among other things, plaintiffs failed to allege that bank's services caused plaintiffs' injuries). This standard requires a "direct relationship" between the defendant's conduct and the injury. *Rothstein v. UBS AG*, 708 F.3d 82, 91–92 (2d Cir. 2013); *see also Fields v. Twitter*, 881 F.3d 739, 749–50 (9th Cir. 2018) (affirming dismissal of primary-liability claims where plaintiffs failed to allege that "Twitter's provision of communication equipment to ISIS . . . had any direct relationship with the injuries that Plaintiffs-Appellants suffered"); *cf. Twitter, Inc. v. Taamneh*, 598 U.S. 471, 497 (2023) (requiring plaintiff to allege that defendant aided and abetted "the act of international terrorism that injured the plaintiff[]"); *Ashley v. Deutsche Bank Aktiengesellschaft*, 144 F.4th 420, 438 (2d Cir. 2025) (same).

Plaintiffs meet none of these elements. Plaintiffs allege, at most, that Maduro illegitimately and illegally exercised control over PDVSA and, by extension, CVP, through corrupt, illegally appointed cronies, and "used" PDVSA and CVP to carry out his corrupt ends, including money laundering and drug trafficking. *See generally* Compl. ¶¶ 149–86. Plaintiffs' allegations demonstrate that PDVSA and CVP are victims of Maduro's corruption and graft, as the Maduro regime has embezzled funds *from* them to serve the regime's own ends. *See,*

*e.g.*, Compl. ¶ 150 (alleging that Maduro's nephews offered to pay debt to a friend with funds from PDVSA, for a fee); ¶¶ 165–70 (describing alleged scheme in which Maduro and cronies embezzled funds "from" PDVSA). The Complaint's allegations thus do not support a plausible inference that either PDVSA or CVP *itself* committed any violent act that caused Plaintiffs' injuries, much less that either did so with the requisite intent.

Indeed, the Complaint does not allege that PDVSA or CVP *themselves* committed *any* violent or dangerous acts. Instead, the Complaint theorizes that funds taken from PDVSA and CVP provided material support to Maduro and his cronies for their tortious acts. But these allegations cannot support a plausible inference that either PDVSA or CVP committed any violent or dangerous act. *Newman*, 758 F. Supp. 3d at 1378–79 (holding that alleged payments to and platforming of Hamas did not constitute violent or dangerous acts).

The Complaint relies (at ¶ 65) on *Boim v. Holy Land Found.*, 549 F.3d 685, 690 (7th Cir. 2008) (en banc), where the Seventh Circuit expanded ATA primary liability to encompass aiding-and-abetting allegations. *Id*. at 691 (holding that Congress had effectively created "primary liability . . . [that] has the character of secondary liability"). But that reliance is misplaced.

*Boim* was decided before Congress passed JASTA and "explicitly added a textual basis for secondary liability to the ATA." *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 396 (7th Cir. 2018). Other circuits, including the Seventh Circuit itself, have since recognized that JASTA's framework for aiding-and-abetting liability replaced the analysis in *Boim*. *See, e.g.*, *Kemper*, 911 F.3d at 396; *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 499 n.14 (2d Cir. 2021). The Seventh Circuit has since clarified that a plaintiff cannot avoid JASTA's more stringent secondary-liability requirements—including the requirement to allege that the defendant supported a designated foreign terrorist organization—by casting their claims as for primary liability. *Kemper*, 911 F.3d at 396 (7th Cir. 2018) (holding that to allow ATA claim for

conspiring with non-FTO to proceed under primary-liability subsection would render narrower secondary-liability subsection "superfluous," a "result we must avoid"). In any event, the Eleventh Circuit never adopted *Boim*, and courts in this district have rejected it for imposing too "sweeping" of a theory of liability. *See Newman*, 758 F. Supp. 3d at 1377 (rejecting *Boim* "given the possible sweeping liability" it would impose); *Newman*, 801 F. Supp. 3d at 1349 ("reaffirm[ing]" holding that "dissent in *Boim* was more compelling").

Even if *Boim*'s analysis had not been replaced by JASTA, it would still be inapt. Here, unlike in *Boim*, Plaintiffs do not allege that PDVSA or CVP knowingly and intentionally funded Maduro in order to support his violent activities. Rather, Plaintiffs allege that Maduro and his illegitimate regime illegally embezzled and pilfered money from PDVSA and CVP. Such allegations do not show that PDVSA or CVP intentionally committed or supported *any* violent conduct. The Complaint does not plead facts to support a plausible inference that PDVSA knew or intended that any of the funds taken from it would be used to carry out attacks of terrorism, particularly under § 2339A's "high bar." *See Newman*, 801 F. Supp. 3d at 1350.

Besides, Plaintiffs do not allege facts to support a plausible inference that any funds that Maduro took from PDVSA or CVP proximately caused Plaintiffs' injuries. Instead, Plaintiffs allege at most that Maduro used pilfered and embezzled funds to prop up his regime and curry favor generally. *See* Compl. ¶¶ 39–57. But these allegations of general support cannot support a plausible inference of a "direct relationship" between any alleged conduct by PDVSA or CVP and Plaintiffs' injuries. *See Rothstein*, 708 F.3d at 91–92; *see also Fields*, 881 F.3d at 749–50 (9th Cir. 2018) (holding that, even if credited, alleged provision of communication equipment to ISIS that "facilitated the organization's growth and ability to plan and execute terrorist acts" was not sufficient to "articulate any connection between Twitter's provision of this aid and [plaintiff's] injuries").

**B.      Plaintiffs Fail To State An ATA Claim Under State Law**

The Florida Anti-Terrorism Act, Fla. Stat. § 772.13(1), cannot permit ATA claims against a foreign state where the ATA forbids it. *See* 18 U.S.C. § 2337(2). And because the Florida ATA is "nearly identical to the Federal ATA," Plaintiffs' failure to state a claim under the federal ATA also dooms Plaintiffs' state-law claims. *See Newman*, 758 F. Supp. 3d at 1381.

**C.      Plaintiffs Fail To State A Claim For Conspiracy Or Civil RICO**

To state a conspiracy claim, Plaintiffs must allege: "(1) an agreement between two or more persons; (2) to participate in an unlawful act; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Newman*, 758 F. Supp. 3d at 1373–74 (quoting *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. App. 1983)); *see also id*. (dismissing for failure to allege AP and Hamas were "pursuing a common object"); *Freeman v. HSBC Holdings PLC*, 57 F.4th 66, 80, 82 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 83 (2023) (affirming dismissal of ATA conspiracy claim for failure to allege that terrorist attacks at issue were in furtherance of alleged conspiracy to circumvent sanctions). The Complaint does not allege any agreement between PDVSA or CVP and Maduro's cronies, much less make any well-pleaded allegation that they were "pursuing a common object," or that Plaintiffs' injuries resulted from any overt act in furtherance of any such common pursuit.

The Complaint's failure to plausibly allege any agreement between PDVSA or CVP and Maduro, or any to plausibly allege that any such agreement caused Plaintiffs' injuries, also dooms Plaintiffs' Civil RICO and Conspiracy to Violate Civil RICO claims. *See In re Terrorist Attacks on September 11, 2001*, 740 F. Supp. 2d 494, 515 (S.D.N.Y. 2010) (dismissing Civil RICO claims for failure to allege "any injury arising from the defendants' investment of the racketeering income" or to allege any factual basis "that any moving defendant took some part in directing the affairs of the al Qaeda enterprise" or "of a conscious agreement, among the

defendants, to commit two predicate acts in furtherance of the common purpose of the RICO enterprise").

Plaintiffs' Civil RICO claims also fail because Plaintiffs fail to allege a direct causal relationship between PDVSA's or CVP's alleged conduct and Plaintiffs' injuries. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."). At most, Plaintiffs' allegations suggest a lengthy, attenuated chain of causation that cannot establish proximate cause. *See Hemi Group, LLC v. City of New York*, 559 U.S. 1, 8–12 (2010) (emphasizing that claim would not meet RICO's direct-relationship requirement if it required Court to move beyond "first step" in causal chain).

## IV.    The Court Should Dismiss The Complaint For Improper Venue

This action should also be dismissed under Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406(a) because venue is not proper in this District. PDVSA is a foreign state under the FSIA, and so venue is governed exclusively by 28 U.S.C. § 1391(f). *See Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 104 (2d Cir. 2017) (describing FSIA "venue requirements . . . set forth in 28 U.S.C. § 1391(f)"). And Section 1391(f) provides that actions against a foreign state may be brought only:

> (1) in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;

> (2) in any judicial district in which the vessel or cargo of a foreign state is situated, if the claim is asserted under section 1605(b) of this title;

> (3) in any judicial district in which the agency or instrumentality is licensed to do business or is doing business, if the action is brought against an agency or instrumentality of a foreign state as defined in section 1603(b) of this title; or

> (4) in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof.

28 U.S.C. § 1391(f).

The Complaint does not invoke § 1391(f), but it does allege that venue lies under § 1391(b)(2), which also permits venue "in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Compl. § 34. But the Complaint does not allege facts to support venue under this provision. In assessing whether "a substantial part of the events or omissions giving rise to the claim occurred," the Eleventh Circuit is clear that "only the events that directly give rise to a claim are relevant." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003). Here, those events are the kidnapping and torture of Plaintiffs, which occurred in Venezuela.

Subsections (2) and (3) of § 1391(f) are also inapplicable. This is not an admiralty case, nor do Plaintiffs allege that either PDVSA or CVP is "licensed to do business or is doing business" in Florida.

Thus, the only venue where Plaintiffs could have brought this action is the U.S. District Court for the District of Columbia. 28 U.S.C. § 1391(f)(4). Although § 1406(a) permits transfer rather than dismissal where transfer would "be in the interest of justice," transfer here would not be "in the interest of justice," because Plaintiffs cannot establish jurisdiction or state a claim. *Pinson v. Rumsfeld*, 192 F. App'x 811, 818 (11th Cir. 2006) (affirming refusal to transfer claims where there was no federal district court in which plaintiff could bring his claims); *Weldon v. Ramstad-Hvass*, 512 F. App'x 783, 798 (10th Cir. 2013) (holding that "it would be an abuse of discretion" to transfer claims that were time-barred and failed to state a claim).

## V.     The Court Should Dismiss The Complaint For Insufficient Service Of Process

PDVSA and CVP understand that this Court granted Plaintiffs' expedited motion for alternative service, and respectfully maintain that Plaintiffs' purported service methods were improper under the FSIA and the Hague Service Convention.

Under the FSIA, agencies and instrumentalities of foreign states—like PDVSA—must be served with process under the exclusive, hierarchical methods prescribed in 28 U.S.C.

§ 1608(b). *See* Fed. R. Civ. P. 4(j)(1) ("A foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. §1608."). Section 1608(b) sets out the hierarchical methods for service on an agency or instrumentality of a foreign state:

> (1) "in accordance with any special arrangement for service" between the parties;
>
> (2) on an "agent authorized by appointment or by law to receive service of process in the United States" or "in accordance with an applicable international convention on service of judicial documents"; or
>
> (3) "if service cannot be made under paragraphs (1) or (2)" and "if reasonably calculated to give actual notice," service of "a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—"
>
> > (A) by letter rogatory,
> >
> > (B) by mailing requiring a signed receipt and "dispatched by the clerk of the court," or
> >
> > (C) "as directed by order of the court consistent with the law of the place where service is to be made."

28 U.S.C. §§ 1608(b)(1), (2), (3)(A)–(C). Because there is no "special arrangement for service" between the parties, 28 U.S.C. § 1608(b)(1), the FSIA required Plaintiffs to serve PDVSA via the Hague Service Convention. *See id*. § 1608(b)(2); *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017) ("[T]he Hague Service Convention specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies." (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988))).

These procedures *must* be followed. As the Supreme Court has held, when serving a foreign state under § 1608(a), "the rule of law demands adherence to strict requirements." *Republic of Sudan v. Harrison*, 587 U.S. 1, 19 (2019) (vacating default judgment based on improper service under FSIA). This principle applies with equal force to service on agencies and instrumentalities under § 1608(b), as this Court held in *LS Energia*, explaining that service on "a foreign state, its subdivisions and instrumentalities" is a "sensitive task" that likewise

18

"demands adherence to strict requirements." 2023 WL 122196, at *6 (quoting *Harrison*, 587 U.S. at 19).

Plaintiffs were also required to serve CVP through the Hague Service Convention. *See* Fed. R. Civ. P. 4(f) (requiring service of summons and complaint via Hague Service Convention where applicable).

To properly serve PDVSA and CVP under the Hague Service Convention, a plaintiff *must* (1) attempt service through Venezuela's central authority, (2) wait a period of no less than six months, (3) make every reasonable effort to obtain a certificate of service from Venezuela's central authority, and (4) without such a certificate, serve process in a manner consistent with Venezuelan law. *See Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venezuela*, 23 F.4th 1036, 1038–42 (D.C. Cir. 2022), *cert. denied*, 143 S. Ct. 113 (2022) (holding that, because plaintiff failed to follow these Hague Service Convention requirements, plaintiff failed to properly serve Venezuela). In acceding to the Hague Service Convention, Venezuela also required all documents be served with Spanish translation. *See* Hague Service Convention, art. 10; Decl. 1 & 3 of Venezuela to the Hague Service Convention.

Plaintiffs did *none* of these things, nor is there any other evidence that Plaintiffs attempted compliance with the Hague Service Convention or sought to resolve any difficulties in so complying through diplomatic channels, as the Convention prescribes. *See* Hague Service Convention, art. 6. Plaintiffs contend that proper service is impossible, but in fact, other litigants have had little difficulty in achieving service through such diplomatic channels. *See, e.g.*, Ltr. to Hon. S. Netburn, *Stansell v. FARC*, No. 16-mc-405 (S.D.N.Y. June 16, 2023), ECF 525 (confirming service on U.S.-recognized Venezuelan Ministry of Finance via diplomatic channels).

*Only* if Hague Convention service could not be effected could Plaintiffs *then* have requested permission to attempt service on PDVSA by alternate methods under

19

§ 1608(b)(3)(C) and on CVP via another manner permitted under Rule 4(f). But even if this Court could let Plaintiffs skip ahead, the process itself as purportedly served by Plaintiffs was still deficient. Plaintiffs' purported service packets lacked Spanish translations, as required under both the FSIA and the Hague Service Convention. *See* 28 U.S.C. § 1608(b)(3); Hague Service Convention, art. 10; Decl. 1 & 3 of Venezuela to the Hague Service Convention; *see also* Ex. Nos. 2, 3. And Plaintiffs failed to request and obtain a summons with the proper deadline for a response. The summons that Plaintiffs requested demanded a response within 21 days. *See* Summons as to PDVSA (Nov. 13, 2025), ECF 10; Summons as to PDVSA (Nov. 17, 2025), ECF 12. But as a foreign state, PDVSA was entitled to 60 days to respond. 28 U.S.C. § 1608(d); *cf. Commodities & Minerals Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*, 2017 WL 11625759, at *4 (S.D. Fla. Apr. 4, 2017) (granting motion to quash improper service where plaintiff instructed foreign-state instrumentality defendant to respond within 20 days).

## CONCLUSION

For these reasons, this Court should dismiss the Complaint with prejudice under Rules 12(b)(1)–(6) of the Federal Rules of Civil Procedure. PDVSA and CVP expressly reserve, and do not waive, all of their rights, privileges, immunities, and defenses, including those not asserted above. PDVSA and CVP submit that oral argument is not necessary in this case because the issues are adequately presented in the briefs, but PDVSA and CVP remain at the Court's disposal if the Court determines otherwise.

## RULE 7.1(a)(3) CERTIFICATION

Undersigned counsel has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good-faith effort to resolve the issues raised in the motion. Plaintiffs oppose the motion.

Dated:  February 10, 2026

Respectfully submitted,

**WHITE & CASE** LLP

By: */s/ Jaime Bianchi*
Jaime Bianchi
W. Dylan Fay
200 S Biscayne Blvd.
Miami, FL 33131
(305) 371-2700
jbianchi@whitecase.com
dylan.fay@whitecase.com

*Counsel for PDVSA and CVP*

*Of Counsel*

Claire A. DeLelle
Danielle Tarin
Michael Mahaffey
701 Thirteenth Street NW
Washington, D.C. 20005
(202) 626-6485
claire.delelle@whitecase.com
danielle.tarin@whitecase.com
michael.mahaffey@whitecase.com