**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**CASE NO. 1:25-CV-23652-GAYLES**

| | |
|---|---|
| JERREL KENEMORE, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> NICOLÁS MADURO MOROS, *et al.*, <br><br> *Defendants*. | Case No. 1:25-cv-23652-Gayles |

**REPLY BRIEF BY PDVSA AND CVP IN SUPPORT OF**
**<u>MOTION TO DISMISS COMPLAINT WITH PREJUDICE</u>**

**WHITE & CASE**
701 Thirteenth Street, NW
Washington, DC 20005

March 31, 2026

*Counsel for PDVSA and CVP*

# **TABLE OF CONTENTS**

**Page**

ARGUMENT ................................................................................................................1

I.    Venue Is Improper In This District ...........................................................1

II.    The Court Lacks Subject-Matter Jurisdiction Over PDVSA Under The FSIA ...................2

    A.    The Terrorism Exception To FSIA Immunity (§ 1605B) Does Not Apply .............2

    B.    The Commercial-Activity Exception To FSIA Immunity Does Not Apply ............4

III.    The Court Lacks Personal Jurisdiction Over PDVSA Or CVP ...........................................5

IV.    The Complaint Fails To State A Claim Against PDVSA .....................................................6

    A.    Plaintiffs Fail To State A Primary-Liability Claim Under The ATA ......................6

    B.    Plaintiffs Fail To State An ATA Claim Under State Law ......................................8

    C.    Plaintiffs Fail To State A Claim For Conspiracy Or Civil RICO ...........................8

V.    The Complaint Fails To State A Claim Against CVP .........................................................9

VI.    Service Of Process Remains Deficient ...............................................................................9

CONCLUSION ............................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Alejandre v. Telefonica Larga Distancia de P.R. Inc.*,
  183 F.3d 1277 (11th Cir. 1999) ......................................................................................... 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................7, 8, 9

*Atchley v. Astrazeneca UK Ltd.*,
  22 F.4th 204 (D.C. Cir. 2022) ..........................................................................................8

*Berkovitz v. Islamic Republic of Iran*,
  735 F.2d 329 (9th Cir. 1984) ............................................................................................5

*Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*,
  581 U.S. 170 (2017)..........................................................................................................2

*In re Chiquita Brands Int'l, Inc.*,
  284 F. Supp. 3d 1284 (S.D. Fla. 2018) ............................................................................8

*Devengoechea v. Bolivarian Republic of Venez.*,
  889 F.3d 1213 (11th Cir. 2018) ........................................................................................4

*Ferguson v. Palm Beach Cnty. Sheriff's Dep't of Corr.*,
  797 F. Supp. 3d 1276 (S.D. Fla. 2025) ............................................................................2

*Fields v. Twitter, Inc.*,
  881 F.3d 739 (9th Cir. 2018) ............................................................................................7

*Flickinger v. Castillo*,
  No. 24-cv-02915, 2026 WL 517973 (N.D. Cal. Feb. 25, 2026) .....................................2

*Fraser v. Smith*,
  594 F.3d 842 (11th Cir. 2010) ..........................................................................................6

*Fuld v. PLO*,
  606 U.S. 1 (2025)..........................................................................................................5, 6

*Georgia Ass'n of Latino Elected Officials v. Gwinnett Cnty. Bd. of Registration & Elections*,
  36 F.4th 1100 (11th Cir. 2022) ........................................................................................7

*Isaac Indus., Inc. v. Petroquimica de Venezuela, S.A.*,
  No. 19-cv-23113, 2022 WL 820376 (S.D. Fla. Mar. 1, 2022) .......................................2

ii

*Jam v. Int'l Fin. Corp.*,
  586 U.S. 199 (2019)..................................................................................................5

*Kemper v. Deutsche Bank AG*,
  911 F.3d 383 (7th Cir. 2018) ...................................................................................6

*LS Energia Inc. v. Corporacion Electrica Nat'l, S.A.*,
  No. 21-cv-21642, 2023 WL 122196 (S.D. Fla. Jan. 6, 2023)..................................10

*Lubian v. Republic of Cuba*,
  No. 10-cv-20533, 2011 WL 13186846 (S.D. Fla. Jan. 25, 2011)..............................5

*Marron v. Moros*,
  No. 21-cv-23190, 2023 WL 357592 (S.D. Fla. Jan. 23, 2023)..................................8

*Murray v. ILG Techs.*,
  798 Fed. App'x 486 (11th Cir. 2020) .......................................................................2

*Newman v. Associated Press*,
  758 F. Supp. 3d 1357 (S.D. Fla. 2024) .....................................................................8

*OBB Personenverkehr AG v. Sachs*,
  577 U.S. 27 (2015)....................................................................................................4

*Oldfield v. Pueblo De Bahia Lora, S.A.*,
  558 F.3d 1210 (11th Cir. 2009) ................................................................................6

*Osio v. Maduro Moros*,
  No. 21-cv-20706, 2025 WL 2336072 (S.D. Fla. Apr. 9, 2025)................................3

*PDVSA United States Litig. Trust v. Lukoil Pan Ams. LLC*,
  65 F.4th 556 (11th Cir. 2023) ..................................................................................3

*Peterson v. Islamic Republic of Iran*,
  No. 10-cv-4518, 2013 WL 1155576 (S.D.N.Y. Mar. 13, 2013)................................3

*Republic of Arg. v. Weltover, Inc.*,
  504 U.S. 607 (1992)..................................................................................................5

*Republic of Sudan v. Harrison*,
  587 U.S. 1 (2019)....................................................................................................10

*Rothstein v. UBS AG*,
  708 F.3d 82 (2d Cir. 2013)........................................................................................8

*Samco Glob. Arms, Inc. v. Arita*,
  395 F.3d 1212 (11th Cir. 2005) ................................................................................5

*Saudi Arabia v. Nelson*,
   507 U.S. 349 (1993).......................................................................................................5

*In re Terrorist Attacks on Sept. 11, 2001*,
   No. 1:03-md-01570, 2022 WL 4227151 (S.D.N.Y. May 3, 2022)..............................3

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
   486 U.S. 694 (1988).....................................................................................................10

*Water Splash, Inc. v. Menon*,
   581 U.S. 271 (2017).....................................................................................................10

*Walden v. Fiore*,
   571 U.S. 277 (2014).......................................................................................................6

*Zivotofsky v. Clinton*,
   566 U.S. 189 (2012).......................................................................................................4

## STATUTES AND RULES

18 U.S.C. § 2333(d)(2) ....................................................................................................6

18 U.S.C. § 2337...............................................................................................................6

28 U.S.C. § 1330...............................................................................................................5

28 U.S.C. § 1605(a)(2).....................................................................................................5

28 U.S.C. § 1608...............................................................................................................9

Fed. R. Civ. P. 8............................................................................................................2, 4

130 Stat. § 2(a).............................................................................................................3, 7

Stripped of its overheated rhetoric, Plaintiffs' Opposition (ECF 31) merely confirms the fundamental deficiencies in the Complaint that PDVSA and CVP identified in their motion to dismiss (ECF 27). At a minimum, because venue is improper, the Court should transfer this action to the U.S. District Court for the District of Columbia—just as another judge of this Court recently did with similar claims. But even transfer would be futile, because the Complaint makes no well-pleaded, factual allegations that connect any conduct by PDVSA or CVP to Plaintiffs' injuries. And none of the alleged conduct by PDVSA has the connection to the United States or to Plaintiffs' injuries required to establish subject-matter and personal jurisdiction under the FSIA.

## <u>ARGUMENT</u>

### I.      Venue Is Improper In This District

The Opposition cannot rebut that venue is improper in this district, because none of the events giving rise to Plaintiffs' claims occurred here. Mot. 16–17. As another judge of this Court recently held in a nearly identical action, the complaint does not allege that a "'substantial part of the events or omissions giving rise to the claim'—or any events—occurred in the United States, see § 1391(f)(1), but instead that all events occurred in Venezuela . . . ." Order, *Gonzales v. Moros*, No. 25-cv-24241 (S.D. Fla. filed Mar. 17, 2026), ECF 53 (transferring action to D.D.C. under § 1391(f)(4)); *see also* Opp. 9, *Gonzales* (ECF 28) (arguing in conclusory and vague terms that venue was proper because "Plaintiffs allege that certain defendants conducted activities in Florida to advance the narco-terrorism enterprise"). Here, as in *Gonzales*, Plaintiffs assert only conclusory allegations of wrongful conduct by PDVSA in Florida which cannot support venue for claims of alleged kidnapping in Venezuela. *Gonzales* did not address whether transfer there was futile. But transfer to the D.D.C. would be futile here, because Plaintiffs cannot establish this Court's subject-matter or personal jurisdiction or state a claim.

1

## II.    The Court Lacks Subject-Matter Jurisdiction Over PDVSA Under The FSIA[1]

The Opposition concedes (at 7) that PDVSA is an "agency or instrumentality of a foreign state," and so is presumptively immune from the Court's jurisdiction under the FSIA. *See* Mot. 6–7. And the Opposition does not refute that, because the Complaint failed to plead *any* exception to foreign-sovereign immunity, the Complaint should be dismissed on this failure alone. *See* Mot. 7 (citing *Isaac Indus.*, 2022 WL 820376, at \*14); *see also* Fed. R. Civ. P. 8 (requiring "short and plain statement of the grounds for the court's jurisdiction"); *Ferguson v. Palm Beach Cnty. Sheriff's Dep't of Corr.*, 797 F. Supp. 3d 1276, 1302 (S.D. Fla. 2025) ("Plaintiff has not responded to this defense at all, thereby waiving any opposition to it."). At any rate, the Opposition cannot overcome the Complaint's failure to "show (and not just arguably show)" that either exception raised for the first time in the Opposition applies here. *Helmerich*, 581 U.S. at 187.

### A.    The Terrorism Exception To FSIA Immunity (§ 1605B) Does Not Apply

***First***, the Opposition effectively concedes (at 5) that alleged injuries in Venezuela—where the alleged detention and torture of Plaintiffs occurred—cannot satisfy § 1605B, which requires "physical injuries . . . occurring in the United States." And contrary to the Opposition, "physical manifestations" of emotional injuries are not "physical injuries" under § 1605B. *Flickinger v. Castillo*, No. 24-cv-02915, 2026 WL 517973, at \*3 (N.D. Cal. Feb. 25, 2026); *cf. Murray v. ILG Techs.*, 798 Fed. App'x 486, 493 (11th Cir. 2020) (holding that plaintiff could not recover for physical injury that "stems from" mental distress).

***Second***, even if alleged physical manifestations of emotional injuries could satisfy § 1605B, the Opposition still could not overcome the Complaint's failure to show that any such

---

[1] In accusing PDVSA and CVP of "efforts to include CVP within their FSIA arguments," the Opposition (at 1, 4) misreads the Motion to Dismiss, which made clear its sovereign-immunity arguments applied only to PDVSA. *See* Mot. 1–2, 6–9.

physical manifestations were "caused by an act of international terrorism in the United States." Rather, all of Plaintiffs' injuries were the result of alleged detention and torture in Venezuela. The Opposition cannot identify any case in which a court exercised jurisdiction under § 1605B where the injury-causing attack itself occurred outside the United States. In any event, Plaintiffs fail even under their own flawed interpretation because, as discussed below, Plaintiffs fail to allege facts to support an inference that PDVSA committed any "act of international terrorism," much less one that caused Plaintiffs' injuries, in the United States or otherwise. *Infra* § IV.A.

*Third*, the Opposition misconstrues (at 7) PDVSA's Motion, which did not contend that PDVSA "is not a 'foreign state' because the Maduro regime is not legitimate." *See* Mot. 1, 6 (demonstrating that PDVSA is a foreign state under FSIA). Rather, as PDVSA explained, Maduro's alleged conduct cannot be attributed to PDVSA.[2] *See* Mot. 8–9 (citing *Lukoil*, 65 F.4th at 561–64).

None of Plaintiffs' cases (Opp. 7–8) is to the contrary. The quoted language from *Osio* (Opp. 7) merely confirms that PDVSA is an "agency or instrumentality of a foreign state," which is not disputed here. 2025 WL 2336072, at *6. *Peterson* concerned whether the political-question doctrine precluded the court from resolving "friction" between U.S. and E.U. sanctions regimes, but says nothing about whether a court can override the President's determination of the leadership of a foreign country. 2013 WL 1155576, at *22. The consideration of Sudan's alleged de facto leader is irrelevant, because—as the Opposition acknowledges (at 9)—he allegedly "shared power" with and "issued commands" to U.S.-recognized government officials. *In re Terrorist*

---

[2] The United States recently filed a Statement of Interest in an unrelated case confirming its continued non-recognition of Maduro. *See* U.S. Statement of Interest, *Stansell v. FARC*, No. 16-mc-405 (S.D.N.Y. Mar. 11, 2026), ECF 621. In this Statement, the U.S. also explained that it is "recognizing Delcy Rodriguez as the sole Head of State." *Id*.

3

*Attacks*, 2022 WL 4227151, at \*11–12. *Zivotofsky* concluded that the courts could vindicate the Jerusalem-born plaintiff's statutory right to have "Israel" listed as his place of birth on his passport, without "determin[ing] whether Jerusalem is the capital of Israel," a prerogative of the Executive Branch. 566 U.S. at 195. But here, attributing Maduro's conduct to PDVSA would require the Court to wade into a nonjusticiable political question by suggesting that Maduro directed PDVSA, contravening the Executive Branch's de-recognition.

**B.      The Commercial-Activity Exception To FSIA Immunity Does Not Apply**

The Opposition criticizes PDVSA (at 1, 9) for not addressing the commercial-activity exception in its opening brief, but that criticism is misplaced. Defying Rule 8, Plaintiffs did not plead this exception (or any exception) as a basis for subject-matter jurisdiction in their Complaint, instead sandbagging PDVSA in an overlong Opposition. *See* Fed. R. Civ. P. 8; *see also* Notice of Ct. Practice (Aug. 20, 2025), ECF 4. Left to guess, PDVSA did not focus on the commercial-activity exception, which does not apply to terrorism claims. Mot. 7–8. And even if the commercial-activity exception did apply, neither the first nor third clause would apply here.

As a threshold step in evaluating whether the commercial-activity exception applies, courts must "identify[] the particular conduct on which the [plaintiff's] action is 'based,'" that is, "the conduct constituting the gravamen of [the] suit." *OBB Personenverkehr AG*, 577 U.S. at 33, 35; *see also Devengoechea v. Bolivarian Republic of Venez.*, 889 F.3d 1213, 1222 (11th Cir. 2018) (same). Courts identify this conduct "by looking to the 'basis' or 'foundation' for a claim, . . . 'those elements that, if proven, would entitle a plaintiff to relief.'" *OBB Personenverkehr AG*, 577 U.S. at 28, 33–34 (focusing on "the conduct that actually injured [Plaintiff]"—"and therefore that makes up the gravamen of [Plaintiff's] lawsuit"). Courts thus look past plaintiffs' characterizations and "zero[] in" on the conduct that actually injured the plaintiffs. *Id.* at 35. Plaintiffs' suit is plainly "based upon" their detention in Venezuela, and so their claims cannot fit within any commercial-

4

activity exception.

Plaintiffs cannot satisfy the first clause for the added reason that their claims are based upon "tortious activity abroad" and not any commercial activity of PDVSA. *Jam v. Int'l Fin. Corp.*, 586 U.S. 199, 215 (2019); *see also Nelson*, 507 U.S. at 361 ("[T]he intentional conduct alleged here (the Saudi Government's wrongful arrest, imprisonment, and torture of [plaintiff]) could not qualify as commercial under the restrictive theory."); *Lubian v. Republic of Cuba*, No. 10-cv-20533, 2011 WL 13186846, at *4 (S.D. Fla. Jan. 25, 2011) (holding that false imprisonment and forced labor are not commercial in nature).

The third clause is further inapplicable because the "direct effect" of Plaintiffs' detention occurred in Venezuela, not the United States. 28 U.S.C. § 1605(a)(2). An effect is "direct" if it follows as "an immediate consequence of the defendant's activity." *Weltover*, 504 U.S. at 618; *Samco Glob. Arms, Inc. v. Arita*, 395 F.3d 1212, 1217 n.10 (11th Cir. 2005). Here, the "immediate consequence" of Plaintiffs' detention occurred in Venezuela. Any effects that may have reached the United States are not "direct" under the FSIA. *See Berkovitz v. Islamic Republic of Iran*, 735 F.2d 329, 332 (9th Cir. 1984) (holding that "direct effect" of murder of American in Iran was his death in Iran); *Lubian*, 2011 WL 13186846, at *5 (holding that "lingering effects" from mistreatment outside U.S. are not "direct" under FSIA).

## III.   The Court Lacks Personal Jurisdiction Over PDVSA Or CVP

Because Plaintiffs have not pleaded, let alone established, an exception to immunity (*supra* § II), and they failed to serve PDVSA under § 1608 (*infra* § VI), the Court lacks personal jurisdiction over PDVSA under the FSIA. *See* Mot. 9 (citing 28 U.S.C. § 1330).

The Opposition does not contest that PDVSA and CVP are entitled to due-process protections. The Opposition instead focuses (at 13) on *Fuld*, which has no bearing here. *Fuld* considered the constitutionality of a narrow statute granting personal jurisdiction over specifically

5

named Palestinian entities only if several conditions were met. *Fuld*, 606 U.S. at 18–24. As the Supreme Court explained, those conditions were closely tied to the defendant's presence in, and conduct directed at, the United States. *Id.* at 23 ("[T]he statute ties the assertion of jurisdiction to predicate conduct that in and of itself bears a meaningful relationship to the United States."). Here, the Complaint does not allege *any* conduct by CVP in the United States (or even anywhere). *See* Compl. ¶¶ 179–86. And the Complaint does not allege any facts to support a plausible inference that any alleged money laundering or other conduct by PDVSA in the United States had a "substantial connection" to Plaintiffs' injuries, much less was the "but-for cause" of those injuries. *See* Mot. 9–10 (citing *Walden*, 571 U.S. at 284; *Fraser*, 594 F.3d at 850; *Oldfield*, 558 F.3d at 1222–23).

## IV.    The Complaint Fails To State A Claim Against PDVSA

### A.    Plaintiffs Fail To State A Primary-Liability Claim Under The ATA

Because the Complaint fails to meet § 1605B's jurisdictional requirements (*supra* § II), Plaintiffs necessarily cannot overcome PDVSA's threshold immunity from ATA actions. *See* Mot. 10–11 (citing 18 U.S.C. § 2337). On top of these threshold defects, the Opposition (at 14–18) merely highlights the conclusory, deficient nature of Plaintiffs' allegations, which cannot meet any element of an ATA primary-liability claim.

*First*, the Opposition is wrong in arguing (at 14) that Plaintiffs have sufficiently alleged that PDVSA itself committed an "act of international terrorism" based on conclusory allegations that Maduro "used" PDVSA for money laundering and drug trafficking. The Opposition ignores that, in replacing *Boim*'s analysis with a cause of action for secondary liability in JASTA, Congress enacted stringent requirements for such claims, including that the defendant supported a designated foreign terrorist organization (which is not and cannot be alleged here). *See* 18 U.S.C. § 2333(d)(2); *see also* Mot. 13–14. Plaintiffs cannot avoid JASTA's requirements by shoehorning

6

claims with the "character" of secondary liability—*i.e.*, allegations that PDVSA was "used" by Maduro to obtain fungible funds, and Maduro carried out violent acts—into primary-liability claims. *See Kemper*, 911 F.3d at 396.

**Second**, the Opposition shows (at 15) that the Complaint's assertions about PDVSA's purported mental state are conclusory and simply parrot the statutory language. *See* Opp. 15 (quoting conclusory assertions that PDVSA "knowingly collected funds," "knowingly provided funds," and "intend[ed] that Maduro would utilize the funds to further his hostage taking and torture of US citizens"); *but see Georgia Ass'n of Latino Elected Officials v. Gwinnett Cnty. Bd. of Registration & Elections*, 36 F.4th 1100, 1118 (11th Cir. 2022) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice to satisfy a plaintiff's burden to support the elements of his claim." (quoting *Iqbal*, 556 U.S. at 678)).

The Opposition tries but fails (at 15) to "back up" these conclusions with allegations that Maduro illegitimately exercised control over PDVSA. But as PDVSA has explained, to impute the knowledge or intent of Maduro to PDVSA would contravene the political-question doctrine. *See supra* § II.A; Mot. 8–9. The Opposition also cites an allegation that a plane owned by PDVSA was "used" to transport Plaintiffs after they were released. Opp. 15 (citing Compl. ¶¶ 95, 171). But the Complaint does not allege that PDVSA was witting of the use of its plane, let alone that PDVSA knew or intended that its plane—allegedly used to *release* Plaintiffs—would be used to "facilitate" kidnappings. *See* Compl. ¶¶ 95, 171.

**Third**, the Opposition cannot identify any well-pleaded fact to support a plausible inference that PDVSA's alleged conduct proximately caused Plaintiffs' injuries. Plaintiffs continue to rely (at 15–16) on the flawed theory that Maduro illegally extracted funds from PDVSA, and that these funds somehow "gave rise" to Plaintiffs' injuries. But such allegations of "general support" cannot

support a plausible inference of a "direct relationship" between PDVSA's alleged conduct and Plaintiffs' injuries. *See* Mot. 14 (citing *Rothstein*, 708 F.3d at 91–92; *Fields*, 881 F.3d at 749–50).

The Opposition's cases (at 15–16) only bolster PDVSA's position. The *Atchley* and *Chiquita* courts relied on detailed allegations that closely tied the defendants' alleged conduct to the plaintiffs' actual injuries—a far cry from Plaintiffs' conclusory assertions here. *See Atchley v. Astrazeneca UK Ltd.*, 22 F.4th 204, 227 (D.C. Cir. 2022) (finding that plaintiffs had made "nonconclusory, detailed allegations" that identified specific contracts, transactions, and amounts allegedly paid directly to terrorists that carried out attacks); *Chiquita*, 284 F. Supp. 3d at 1297–1299 (discussing alleged amounts, dates, and forms of transactions). Plaintiffs misrepresent (at 15) *Marron*, which did *not* hold that "PDVSA's donation of funds and other material support to Maduro is a proximate cause of Plaintiffs' injuries." 2023 WL 357592, at *3–5 (discussing Defendants' role in Plaintiffs' injuries). PDVSA was not a defendant in that case, which was brought *directly* against Maduro and other perpetrators of the alleged kidnapping at issue there, and which says nothing about alleged "material support." *Id*.

## B.    Plaintiffs Fail To State An ATA Claim Under State Law

The Opposition does not contest that the Florida ATA is "nearly identical to the Federal ATA," much less point to *any* meaningful difference between the elements of the two statutes. Indeed, the Opposition *agrees* (at 16) with PDVSA that Plaintiffs' Florida ATA claims rise and fall with their federal ATA claims. *See* Mot. 15 (quoting *Newman*, 758 F. Supp. 3d at 1381). Plaintiffs' waiver argument is thus meritless. Because Plaintiffs cannot state a claim under the federal ATA, they cannot state a claim under the Florida ATA either.

## C.    Plaintiffs Fail To State A Claim For Conspiracy Or Civil RICO

The Opposition cannot overcome the Complaint's failure to allege *facts* that would support a plausible inference of an agreement that caused Plaintiffs' injuries. The Opposition recites (at

16–17) a legal conclusion from the Complaint that simply parrots the statutory language and that the Court should not credit. *See Iqbal*, 556 U.S. at 678. And the Opposition rehashes allegations about illegitimate appointees, but does not identify any alleged conduct by PDVSA that *caused* Plaintiffs' injuries. *See supra* § II.B; *see also* Mot. 15–16.

## V.     The Complaint Fails To State A Claim Against CVP

The Complaint says almost nothing about CVP, and the Opposition says even less. The Opposition can point to just *one* "allegation" in the Complaint about CVP's conduct, a conclusory assertion that CVP is "an important node in PDVSA's money laundering network." Opp. 3 (citing Compl. ¶ 179). This "naked assertion[]" devoid of "further factual enhancement" cannot state a claim against CVP under any cause of action. *See Iqbal*, 556 U.S. at 678 (holding that will not do).

The Opposition also refers briefly (at 3–4, citing Compl. ¶¶ 180–86) to allegations related to CVP subsidiaries. Setting aside the deficiency of those allegations, the Opposition does not contend (nor could it) that the Court should pierce the corporate veil and hold CVP liable for the conduct of those entities. *See Alejandre v. Telefonica Larga Distancia de P.R.*, 183 F.3d 1277, 1286 (11th Cir. 1999) (affirming dismissal because Plaintiffs did not make "sufficient basis for overcoming the presumption of separate judicial status").

## VI.    Service Of Process Remains Deficient

Plaintiffs concede (at 18) that they were required to serve PDVSA, a foreign state, under the FSIA. But Plaintiffs misread § 1608(b)(2), which—contrary to Plaintiffs' assertions—does not permit service on just any officer or agent of an agency or instrumentality of a foreign state. Rather, service under this provision can be made only on an officer or agent "*authorized by appointment or by law to receive service of process in the United States*." 28 U.S.C. § 1608(b)(2). Plaintiffs do not, and cannot, contend that they met this requirement.

Plaintiffs also contend (at 19) that due process and proper service cannot be squared with

the realities on the ground. Not so. Indeed, other litigants have achieved service through diplomatic channels. *See* Mot. 19. And in other actions brought by counsel representing Plaintiffs here, PDVSA has repeatedly and precisely explained how to perfect service. *See, e.g.*, Mot. 9, *Osio v. Maduro*, No. 21-cv-20706 (S.D. Fla. filed Dec. 14, 2024), ECF 310; Br. 47, *Osio v. PDVSA*, No. 25-12365 (11th Cir. filed Sept. 18, 2025), ECF 15. Plaintiffs' counsel may find proper FSIA service to be inconvenient, but that does not mean they can ignore it. *See Harrison*, 587 U.S. at 19 (holding that, when serving foreign state under § 1608(a), "the rule of law demands adherence to strict requirements"); *LS Energia*, 2023 WL 122196, at *6 (applying *Harrison* to § 1608(b)).

The Opposition does not address Plaintiffs' failure to serve CVP under the Hague Service Convention, or even contest that such service is required. Instead, Plaintiffs persist in ignoring the Hague Service Convention, contending (at 19) that service under either Rule 4(h)(1) and Rule 4(f)(3) would be sufficient, and that both were satisfied. Wrong on all counts. The Hague Service Convention "'pre-empts inconsistent methods of service' wherever it applies." *Water Splash*, 581 U.S. at 273 (quoting *Volkswagenwerk*, 486 U.S. at 699). Rule 4(f)(3) only permits service "by other means not prohibited by international agreement, as the court orders," but the Hague Service Convention does prohibit Plaintiffs' requested mode of service. *See* Mot. 18–20. And even if Rule 4(h)(1) applied, it would still require Plaintiffs to effect service on an agent "authorized to receive service," which Plaintiffs did not do.

Plaintiffs do not dispute that the process itself, as purportedly served, was deficient, because it lacked translations and stated the wrong deadline for PDVSA to respond. *See* Mot. 20.

## CONCLUSION

For these reasons and those stated in the Motion to Dismiss, the Court should dismiss the Complaint with prejudice. PDVSA and CVP expressly reserve, and do not waive, all of their rights, privileges, immunities, and defenses, including those not asserted above.

Dated:  March 31, 2026

Respectfully submitted,

**WHITE & CASE** LLP

By: /s/ Jaime Bianchi
Jaime Bianchi
W. Dylan Fay
200 S Biscayne Blvd.
Miami, FL 33131
(305) 371-2700
jbianchi@whitecase.com
dylan.fay@whitecase.com

*Counsel for PDVSA and CVP*

*Of Counsel*

Claire A. DeLelle
Danielle Tarin
Michael Mahaffey
701 Thirteenth Street NW
Washington, D.C. 20005
(202) 626-6485
claire.delelle@whitecase.com
danielle.tarin@whitecase.com
michael.mahaffey@whitecase.com

11