**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-cv-23652-GAYLES**

JERREL KENEMORE, *et al.*,

      Plaintiffs,

v.

NICOLÁS MADURO MOROS, *et al.*,

      Defendants.

_____/

**DEFENDANT DELCY ELOINA RODRIGUEZ GOMEZ'S**
**<u>MOTION TO DISMISS WITH PREJUDICE</u>**

**INTRODUCTION**

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6), Defendant Delcy Eloina Rodriguez Gomez moves to dismiss Plaintiffs' Complaint [ECF No. 1] with prejudice.[1] At the outset, before even addressing the substance of the claims against President Rodriguez, those claims must be dismissed with prejudice because President Rodriguez—as the duly recognized head of state of Venezuela—is immune from this civil action and thus this Court lacks jurisdiction over her. Furthermore, even if that absolute defense to Plaintiffs' claims did not apply here—it does—the Complaint should still be dismissed due to insufficient service of process. And, even as a matter of substantive pleading, the Complaint fails to state a claim upon which relief can be granted against President Rodriguez.

Although the Complaint makes serious allegations about very serious matters, those allegations are entirely beside the point as to President Rodriguez. Indeed, the Complaint fails to allege that President Rodriguez did anything to Plaintiffs, let alone did anything wrong. Seemingly aware of this fatal pleading deficiency, the Complaint attempts to cobble together a viable claim against President Rodriguez via legal conclusions, hyperbole, and non sequiturs about interviews and opinion pieces. But none of that noise does anything to salvage the claims; in fact, drilling down to the actual factual allegations in the Complaint, President Rodriguez is mentioned a grand total of *three* times. And not one of those allegations creates any form of liability of any nature; she is effectively a stranger in the Complaint—and one that is both immune from suit and was never properly served.

---

[1]    In compliance with this Court's paperless Order regarding joint motions, [ECF No. 33], President Rodriguez is filing this motion separately because there are dismissal arguments that apply uniquely and exclusively to her.

GELBER SCHACHTER & GREENBERG, P.A.
ONE SOUTHEAST THIRD AVENUE ▪ SUITE 2600 ▪ MIAMI, FLORIDA 33131 ▪ WWW.GSGPA.COM

Taken together or separately, and as discussed in greater detail below, the claims in this case cannot proceed against President Rodriguez. Nor can Plaintiffs overcome these dismissal arguments through amendment or otherwise. Accordingly, the motion to dismiss should be granted and the claims against President Rodriguez should be dismissed with prejudice.

**FACTUAL BACKGROUND**

Plaintiffs fall into two categories: (1) three individuals who allege that they were kidnapped and held hostage by Defendant Maduro; and (2) the family members of those individuals. [ECF No. 1, ¶¶ 4, 9-19]. According to Plaintiffs, the three individuals were held captive in harsh conditions for nearly two years until they were eventually released in exchange for the release of Defendant Alex Saab by the United States. *Id.* at ¶¶ 4-5.

While Plaintiffs attempt to allege that Defendants materially assisted Maduro through narcotics trafficking into the United Sates and money laundering through the United States, *e.g., id*. at ¶¶ 6, 34, 36, 131, 187, 219, President Rodriguez is practically absent from those allegations. In fact, she is discussed in only three paragraphs, all of which fail to support any of Plaintiffs' conclusions.

The Complaint alleges that President Rodriguez "has been the *de facto* Vice President of Venezuela since 2018"; was "the *de facto* Minister of Economy, Finance and Foreign Trade of Venezuela from 2020 to 2024"; and was sanctioned by the Office of Foreign Assets Control in 2018. *Id.* at ¶ 30. It also alleges that President Rodriguez is Defendant Jorge Rodriguez's sister. *Id.* at ¶ 31. Finally, as the only substantive allegation (which is actually more of a legal conclusion), the Complaint states, as part of only Count VI:

> Predicate: Money Laundering Violations (PDVSA, Maduro, Padrino López, Moreno Perez, Torres, El Aissami, Delcy Rodriguez, Alex Saab). RICO predicates include criminal money laundering in violation of 18 U.S.C. § 1956 and 18 U.S.C. § 1957. Defendants launder the proceeds of Maduro and the Cartel's drug running

through the United States, especially South Florida. Defendants also launder the proceeds of crimes against a foreign nation, including crimes against Venezuela such as sale and distribution of controlled substances, murder, kidnapping, and embezzlement of public funds for the benefit of a public official.

*Id.* at ¶ 266. Beyond these nominal references, there is not a single allegation in the remaining 278 paragraphs that discusses President Rodriguez. In other words, the Complaint fails to connect President Rodriguez to any of the harms that Plaintiffs allege.

## **ARGUMENT**

The Complaint should be dismissed for the following reasons: (1) this Court lacks subject matter jurisdiction and personal jurisdiction over President Rodriguez because she is Venezuela's recognized head of state and is immune from suit; (2) President Rodriguez was not served in accordance with the law; and (3) the Complaint fails to state a claim upon which relief can be granted against President Rodriguez. These arguments—each of which separately compels dismissal of the Complaint—are addressed in turn below.

### 1.  **President Rodriguez is Venezuela's Head of State and is Immune from Suit**

President Rodriguez is Venezuela's head of state and Venezuela has not waived her immunity. This alone constitutes a more than sufficient ground to dismiss the Complaint with prejudice. And with good reason, as it will allow President Rodriguez to "perform [her] duties without being subject to . . . a foreign country's legal system." *In re Grand Jury Proceedings*, 817 F.2d 1108, 1110 (4th Cir.1987).

"Head of state immunity is an extension of the common law doctrine of foreign sovereign immunity." *Aljabri v. bin Salman*, 106 F.4th 1157, 1163 (D.C. Cir. 2024) (citing *Manoharan v. Rajapaksa*, 711 F.3d 178, 179 (D.C. Cir. 2013)). "[C]ommon law foreign immunity distinguishes between two types of immunity: status-based and conduct-based immunity." *Aljabri*, 106 F.4th at 1163; (quoting *Lewis v. Mutond*, 918 F.3d 142, 145 (D.C. Cir. 2019)). "Status-based immunity is

GELBER SCHACHTER & GREENBERG, P.A.
ONE SOUTHEAST THIRD AVENUE  ▪  SUITE 2600  ▪  MIAMI, FLORIDA 33131  ▪  WWW.GSGPA.COM

reserved for diplomats and heads of state and attaches regardless of the substance of the claim."
*Aljabri*, 106 F.4th at 1163 (internal quotation and citation omitted). "[T]he rationale of head-of-state immunity is to promote comity among nations by ensuring that leaders can perform their duties without being subject to detention, arrest or embarrassment in a foreign country's legal system." *Yousuf v. Samantar*, 699 F.3d 763, 769 (4th Cir. 2012) (citation omitted). "A head-of-state recognized by the United States government is absolutely immune from personal jurisdiction in United States courts unless that immunity has been waived by statute or by the foreign government recognized by the United States." *Id*. (citation omitted); *see also Aljabri*, 106 F.4th at 1163.

In determining whether a foreign official is entitled to head of state immunity, the Court must conduct a two-part test. *Aljabri*, 106 F.4th at 1164. First, the Court assesses whether the Executive Branch has filed a suggestion of immunity in the case. *Id.* If one has been filed, then the Court must defer to the suggestion. *Id.* If the Executive Branch does not weigh in (i.e., no position is taken), then the Court must "independently assess whether 'all the requisites for such immunity exist[ ].'" *Id.* (quoting *Samantar v. Yousuf*, 560 U.S. 305, 311 (2010).[2]

Here, even though no suggestion of immunity has yet been filed in this case, the facts and circumstances make clear that President Rodriguez meets the second part of the test. Indeed, there can be no dispute that President Rodriguez is Venezuela's president and head of state. It is well known and undisputed that, shortly after the United States removed Defendant Maduro from

---

[2]   The Venezuelan government has made a request to the United States Department of State for the issuance of a formal determination acknowledging head of state immunity for President Rodriguez in this case, and that request remains pending. Accordingly, at a minimum, in the event the Court believes it needs to first hear from the United States before adjudicating this issue, the resolution of this motion should be held in abeyance pending a formal notification from the United States regarding this issue.

GELBER SCHACHTER & GREENBERG, P.A.
ONE SOUTHEAST THIRD AVENUE ▪ SUITE 2600 ▪ MIAMI, FLORIDA 33131 ▪ WWW.GSGPA.COM

Venezuela, Delcy Rodriguez was sworn in as Venezuela's president.[3] In addition to this indisputable fact, in court filings in other jurisdictions, the U.S. government has formally recognized President Rodriguez as the head of state of Venezuela. For example, in *Stansell v. FARC*, the United States, through the Department of State, expressly declared that it "recognize[s] Delcy Rodriguez as the sole Head of State, able to take action on behalf of Venezuela." Case No. 16-mc-405, at ECF 621, p. 2 (S.D.N.Y, March 11, 2026). Each of these facts, together or separately, are sufficient for this Court to conclude that President Rodriguez is immune from suit.

The law in this regard is straightforward. In the absence of a formal suggestion of immunity filed in the at-issue proceeding, "a district court ha[s] authority to decide for itself whether all the requisites for such immunity [exist]." *Samantar*, 560 U.S. at 311 (internal quotations omitted). "When deciding for itself, 'a district court inquire[s] whether the ground of immunity is one which it is the established policy of the State Department to recognize.'" *Wultz v. Bank of China Ltd.*, 32 F. Supp. 3d 486, 492–93 (S.D.N.Y. 2014) (quoting *Samantar*, 560 U.S. 305 at 312). As part of this analysis, "[o]ut of respect for the Executive Branch's constitutional role in foreign relations,"

---

[3] At any stage of a proceeding, a court may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b); *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). Accordingly, because President Rodriguez's swearing in and position as president of Venezuela have been widely reported and are not subject to reasonable dispute, *see* Delcy Rodriguez formally sworn in as Venezuela's interim president, Reuters (January 5, 2026), https://www.reuters.com/world/americas/delcy-rodriguez-formally-sworn-venezuelas-interim-president-2026-01-05/ (last visited May 28, 2026); Madeline Halpert, Venezuela swears in interim president after defiant Maduro pleads not guilty, BBC (January 5, 2026), https://www.bbc.com/news/articles/ce8gen8nnvlo (last visited May 28, 2026); Delcy Rodriguez sworn in as interim president of Venezuela following Maduro's removal from office, Associated Press (January 5, 2026), https://apnews.com/video/delcy-rodriguez-sworn-in-as-interim-president-of-venezuela-following-maduros-removal-from-office-80b6f28b2a1e42c2a4d8e78aa1fe3a7f (last visited May 28, 2026), President Rodriguez requests that the Court take judicial notice of her position in the Venezuelan government.

GELBER SCHACHTER & GREENBERG, P.A.
ONE SOUTHEAST THIRD AVENUE ▪ SUITE 2600 ▪ MIAMI, FLORIDA 33131 ▪ WWW.GSGPA.COM

courts must rely heavily on "State Department 'policy and practice,' as shown in "'suggestions of immunity and *statements of interest* in other cases.'" *Aljabri*, 106 F.4th at 1164 (quoting *Broidy Cap. Mgmt. LLC v. Muzin*, 12 F.4th 789, 798 (D.C. Cir. 2021) (emphasis added)). If, after that review, the Executive Branch's policies favor giving an individual head of state status, then the court lacks jurisdiction over the individual. *Id.* at 1164 (citing *Samantar*, 560 U.S. at 311 (2010)).

Here, not only is it an indisputable fact that President Rodriguez is Venezuela's present head of state, the Executive Branch has also explicitly affirmed her status in another proceeding, recognizing "Delcy Rodriguez as the sole Head of State, able to take action on behalf of Venezuela." Plaintiffs simply cannot challenge the Executive Branch's determination, to which this Court must defer. Thus, the Court must find that President Rodriguez is entitled to head-of-state immunity.

This particular brand of immunity is absolute. Head of state immunity does not merely bar a court from exercising personal jurisdiction over a defendant. *See Matar v. Dichter*, 500 F. Supp. 2d 284, 290 (S.D.N.Y. 2007), aff'd, 563 F.3d 9 (2d Cir. 2009*)*. It also prevents the Court from exercising subject matter jurisdiction over the claims. *Miango v. Democratic Republic of Congo*, No. CV 15-1265 (ABJ), 2019 WL 2191806, at *2 (D.D.C. Jan. 19, 2019) ("A court lacks subject matter jurisdiction if the defendant is a foreign official entitled to immunity."). Indeed, it provides the head of state with "absolute immunity in United States courts." *Rusesabagina v. Republic of Rwanda*, 652 F. Supp. 3d 1, 11 (D.D.C. 2023) ("[S]itting heads of state are entitled to absolute immunity in United States courts."). Said differently, "sitting heads of state . . . [are] confer[red] absolute immunity from suit while in office, regardless of the nature of the alleged act." *Does 1-5 v. Obiano*, 138 F.4th 955, 958 (5th Cir. 2025); *see also Aljabri*, 106 F.4th at 1166 (affirming dismissal of lawsuit based on head of state immunity).

GELBER SCHACHTER & GREENBERG, P.A.
ONE SOUTHEAST THIRD AVENUE ▪ SUITE 2600 ▪ MIAMI, FLORIDA 33131 ▪ WWW.GSGPA.COM

Accordingly, because President Rodriguez is entitled to head of state immunity, this Court necessarily lacks personal jurisdiction over President Rodriguez. On this basis alone, the Complaint must be dismissed with prejudice.

### 2. President Rodriguez was not Properly Served

As noted in an earlier Order by this Court permitting alternative service, Venezuela is a party to the Hague Convention. [ECF No. 14, p.3 n.2 (discussing Venezuela's status as a signatory to the Hague Convention and acknowledging that Venezuela objects to service as specified in Article 10, subpart a)]. The Court's earlier ruling on service was based on an *ex parte* motion requesting permission to perform alternative service. Since then, there have been developments in the law and arguments that were never presented (due to the *ex parte* nature of the request) that warrant a different conclusion on this motion. Further, Plaintiffs' own proof of service fails to establish that they properly served President Rodriguez.

To begin, Plaintiffs should be required to serve President Rodriguez through the Hague Convention. While district courts in the Eleventh Circuit frequently permit broad forms of alternative service on foreigners under Rule 4(f)(3), which provides that service may be accomplished "by other means not prohibited by international agreement, as the court orders," Fed. R. Civ. 4(f)(3), recent developments in the law make clear that Plaintiffs' service was improper.

In the Order permitting alternative service, this Court determined that alternative service was warranted, in part, because "the Hague Convention does not specifically preclude service via text, e-mail, or social media direct message [and] [w]here a signatory nation has objected to the alternative means of service provided by the Hague Convention, that objection is expressly limited to those means and does not represent an objection to other forms of service, such as text, e-mail,

7

or social media direct message." [ECF No. 14 (citing *Stat Med. Devices, Inc. v. HTL-Strefa, Inc.*, Case No. 15-cv-20590, 2015 WL 5320947, at *3 (S.D. Fla. Sept. 14, 2015)]. However, as noted by the Second Circuit in *Smart Study Co., Ltd v. Shenzhenshixindajixieyouxiangongsi*, because it was "[d]rafted in 1965, the Convention unsurprisingly makes no mention of email service." 164 F.4th 164, 170 (2d Cir. 2025). Logically, "it would make little sense for a nation to object to a method of service not identified or authorized by the Convention, since, as the district court explained, 'there would be nothing affirmative to object to.'" *Id.* (quoting S*mart Study Co. v. Acuteye-Us*, 620 F. Supp. 3d 1382, 1396 (S.D.N.Y. 2022)).

The United States Supreme Court has also made clear that the Convention "specifies certain approved methods of service and pre-empts inconsistent methods of service wherever it applies." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017) (internal quotations omitted). Through this lens, the *Smart Study* Court turned to the Hague Convention's preamble's first stated objective which is "to create appropriate means" for the service of documents abroad.  164 F.4th 170 (citing Hague Service Convention). "By coupling 'create' with 'appropriate,' the opening clause indicates that methods not 'create[d],' or specified, by the Convention are not 'appropriate' for the service of documents." *Id*. Any other reading would functionally render the Convention without purpose. As a natural consequence of the alternate interpretation previously endorsed by this Court, if the Convention were read "to permit email service [absent a specific objection], it is difficult to see why any party 'would ever choose slower, more costly methods' of service laid out in the Convention's text." *Id.* (quoting  *Anova Applied Elecs., Inc. v. Hong King Grp., Ltd.*, 334 F.R.D. 465, 472 (D. Mass. 2020)). In fact, reading an "implicit permission" into the Convention's silence on "all types of service not affirmatively barred" would open the floodgates and encourage the very end-runs Plaintiffs utilized to avoid the system the Hague Convention created. *See id.*

"[C]ompliance with the Convention is mandatory in all cases to which it applies." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988). Because the Hague Convention created all "appropriate" methods of service, any method of service not included in the Convention is inappropriate and is, thus, impermissible under Rule 4(f)(3). *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 480 F. Supp. 3d 977, 984 (N.D. Cal. 2020) (holding service by email under Rule 4(f)(3) was not allowed because it was not among the "'approved methods of service' specified in the Convention." (quoting *Water Splash*, 137 S. Ct. at 1507)).

Accordingly, the Court should find that service on President Rodriguez via social media is prohibited by the Hague Convention and is thus unavailable under Rule 4(f)(3). And, because President Rodriguez was not served via a method approved by the Hague Convention, the Complaint must be dismissed pursuant to Rule 12(b)(5).

In the alternative, if the Court determines that service via social media was proper under the Hague Convention, the Court should find that Plaintiffs have failed to make a prima facie showing that they properly served President Rodriguez. It is true that "[i]f a plaintiff makes a prima facie showing of proper service, the burden shifts back to the defendant to bring strong and convincing evidence of insufficient process." *Hollander v. Wolf*, 2009 WL 3336012, at *3 (S.D. Fla. Oct. 14, 2009). However, Plaintiffs' signed return of service fails to satisfy their initial burden to demonstrate the service was valid.

According to Nelson Tucker's affidavit, he served President Rodriguez at the following website: https://www.imstagram.com/delcyrodriguezv/. [ECF No. 17, p. 34]. This, however, is not a real website and attempting to view the page warns the user that their personal information is at risk. Further, the link purportedly provided to President Rodriguez via her Instagram, https://globallegalnotices.com/posts/delcy-eloina-rodriguez-gomez-venezuela-1210, is not a real

GELBER SCHACHTER & GREENBERG, P.A.
ONE SOUTHEAST THIRD AVENUE ▪ SUITE 2600 ▪ MIAMI, FLORIDA 33131 ▪ WWW.GSGPA.COM

page and leads the user to a "404 Page not found!" notice. *Id.* at p. 37. In simple terms, the only thing that Plaintiffs' proof of service demonstrates is that Nelson Tucker sent an inoperative link to a non-existent website. This is hardly sufficient to demonstrate that Plaintiffs met their initial burden to establish sufficient service.

Moreover, even if Plaintiffs had actually sent the documents to President Rodriguez's Instagram account (assuming that were permissible, which it is not), the documents included in the accurate link[4] (which was never sent) are deficient under the Hague Convention. In acceding to the Hague Service Convention, Venezuela explicitly required that all documents be served with Spanish translation. *See* Hague Service Convention, art. 10; Decl. 1 & 3 of Venezuela to the Hague Service Convention. Although Plaintiffs included a "machine translated by Google" Spanish language version of the Complaint, they failed to provide translated copies of any of the summons or service documents. To be clear, service in Venezuela explicitly requires that "notices and documents and other items annexed to the notices will be accepted only when they are properly translated into the Spanish language." *Id.* Thus, by translating only the Complaint, Plaintiffs failed to comply with the Hague Convention.

There are myriad reasons that service in this matter is wholly deficient. To begin, allowing service via a social media message to Instagram is not permitted by the Hague Convention. However, even if it were, Plaintiffs' proof of service demonstrates that they failed to send the documents to President Rodriguez's Instagram. It also demonstrates that even if the link had been sent to President Rodriguez's Instagram, it would not have provided her with the documents. Finally, even if all those errors did not exist, the documents Plaintiffs prepared are deficient under the explicit mandates of the Hague Convention.

---

[4]     https://globallegalnotices.com/post/delcy-eloina-rodriguez-gomez-venezuela-1210

Gelber Schachter & Greenberg, P.A.
One Southeast Third Avenue ▪ Suite 2600 ▪ Miami, Florida 33131 ▪ www.gsgpa.com

Because President Rodriguez was not properly served, this Court has no personal jurisdiction over her and the Complaint must be dismissed.

### 3. <u>The Complaint Fails to State a Claim Against President Rodriguez</u>

The bare allegations against President Rodriguez do not withstand even a minimal degree of scrutiny under a Rule 12(b)(6) analysis. Dismissal of the claims is required for this reason as well.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While this pleading standard "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotations omitted). Complying with this mandate means that pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Instead, a complaint must provide sufficient *facts* to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (internal quotations omitted; alteration in original).

In the instant matter, Plaintiffs fail to plead any facts supporting their claims against President Rodriguez. Other than a conclusory allegation related to money laundering in Court VI, [ECF No. 1, ¶ 266], President Rodriguez's "involvement" in these events begins and ends with a single fact—she held a position in the Venezuelan government, *id.*, ¶¶ 30-31. This is plainly insufficient.

The Complaint also fails to establish any form of liability against President Rodriguez by means of grouping "all Defendants" together. Any argument to the contrary should be soundly

GELBER SCHACHTER & GREENBERG, P.A.
ONE SOUTHEAST THIRD AVENUE ▪ SUITE 2600 ▪ MIAMI, FLORIDA 33131 ▪ WWW.GSGPA.COM

rejected. Indeed, each of those "grouped" paragraphs—as with the majority of the "factual" allegations in the Complaint—offers nothing more than a legal conclusion. And, worse still, these grouped paragraphs frequently mirror each other, differing only in the named offense. Multiple particularly glaring examples are quoted below:

> In the case of all Defendants, committed an act of terrorism in Florida by providing material support to terrorists (i.e., to Maduro) in violation of 18 U.S.C. § 2339A and 18 U.S.C. § 2339C, in that Defendants trafficked cocaine in Florida intending that the monetary proceeds of their cocaine sales be used for acts of terror that included the kidnapping and torture of Jerrel Kenemore, Jason Saad, and Jose Marval.

> All of the Defendants have committed acts of terrorism against the Plaintiffs by means of providing material support to terrorists (Maduro). The material support occurring in the United States primarily has taken the form of (1) narcotics trafficking into Florida (and elsewhere in the United States) to provide a lucrative stream of narcotics proceeds to Maduro, (2) money laundering to, through and from Florida (and elsewhere in the United States) to conceal, cloak in "legitimacy," and or facilitate the expenditure of ill-gotten gains by Maduro, and (3) unlawfully assisting with the evasion of U.S. sanctions.

> All of the Defendants have conspired and agreed to commit a wide variety of interrelated crimes (the "Maduro Criminal Conspiracy"), including but not limited to (a) narcotics trafficking and narco-terrorism against the United States; (b) unlawful funding and provision of material support to terrorists through and from within the United States; (c) money laundering to, through and within the United States; (d) kidnapping, arbitrary detention, and torture of U.S. citizens (as well as Venezuelan citizens); and (e) public corruption offenses, bribery, embezzlement of government funds, and the like, in Venezuela.

> Defendants violated the federal Anti-Terrorism Act ("ATA") by providing material support for the terrorism committed by Maduro.

> 18 U.S.C. § 2339A makes it a crime to knowingly provide material support or resources knowing or intending that the funds will be used for, inter alia, hostage taking in violation of 18 U.S.C. § 1203 or torture of a U.S. citizen at a location outside of the United States in violation of 18 U.S.C. § 2340A. The Defendants violated Section 2339C by knowingly collecting funds (through sales of narcotics in the United States, including in Florida) for the benefit of Maduro, and knowingly providing funds (the proceeds of narcotics sales from the United States, including Florida) to Maduro, intending that Maduro would utilize the funds to further his hostage taking and torture of U.S. citizens.

Gelber Schachter & Greenberg, P.A.
One Southeast Third Avenue ▪ Suite 2600 ▪ Miami, Florida 33131 ▪ www.gsgpa.com

*Id.* at ¶¶ 35(b), 131, 187, 217, 245(b)(i). Needless to say, these allegations, and all others similarly phrased related to money laundering, conspiracy to commit kidnapping, and Travel Act violations, are wholly insufficient to meet Plaintiffs' pleading burden. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

Even a cursory review of the Complaint reveals that there are no factual allegations supporting any of these conclusions. Plaintiffs do not allege that President Rodriguez attended a meeting, gave an order, made a statement, took an action, or made a single decision that bears upon or relates to any of the claims in this case. Indeed, in earlier briefing, Plaintiffs were confronted with this argument and could not identify a single paragraph containing a substantive factual allegation against President Rodrigeuz. *See* [ECF No. 43]. This pleading failure alone warrants dismissal of the Complaint.

But there is more. The Complaint also fails to allege any facts concerning the purported violations of law. Plaintiffs do not identify a single instance of money laundering or even the bank accounts or discrete funds associated with the accusation. While the Complaint spends considerable time highlighting the dangers of drug trafficking and narco-terrorism, it does not identify a single instance of trafficking by any of the Defendants, relying instead on quotes from reports related to general investigations or commentary on trafficking. *E.g.,* [ECF No. 1, ¶¶ 156-164].

Courts in this District repeatedly routinely reject similar complaints offering little more than legal conclusions, hyperbolic statements regarding the dangers of illegal activity, and no actual facts demonstrating that the named defendants *did anything*. In *Birmingham v. Doe*, No. 21-CV-23472, 2022 WL 18134962, at *16 (S.D. Fla. Dec. 6, 2022), report and recommendation

adopted sub nom. *Birmingham v. ROFX.net*, No. 21-23472-CIV, 2023 WL 112308 (S.D. Fla. Jan. 5, 2023), Judge Scola adopted Judge Goodman's report and recommendation recommending that the plaintiffs' motion for a default judgment be denied in large part because the Complaint failed to state a claim and the allegations were insufficient to support a default judgment even if admitted as true. There, for example the plaintiffs pleaded that the defendants, among other things "knew the property involved represented the proceeds of some form of unlawful activity." *Id.* at *14. The court held that the allegation was insufficient to support the necessary scienter element for a RICO offense. *Id.* (citing *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 949 (11th Cir. 1997)). Similarly, in *Freites v. Medina* the Court granted the defendants' motion to dismiss the plaintiffs' RICO claims because the statement that "the funds were strategically concealed and integrated into Defendants' organization accounts and operations" "fail[ed] to offer any information about the alleged transaction or how [it] worked" and the "conclusory allegation [was] wholly insufficient to establish money laundering as a predicate act." No. 25-CV-20465, 2025 WL 1425491, at *11 (S.D. Fla. May 16, 2025).

This Complaint contains five causes of action against President Rodriguez. For the reasons explained above and below, every single count must be dismissed for failure to state a claim.

### a. *Counts II and IV*

Counts II and IV[5] require Plaintiffs to establish that President Rodriguez (1) committed an unlawful action, i.e. an "act of international terrorism;" (2) possessed the requisite mental state; and (3) caused the Plaintiffs' injuries. *In re Chiquita Brands Int'l, Inc.*, 284 F. Supp. 3d 1284, 1304 (S.D. Fla. 2018) ("Liability under the ATA has three elements: (1) unlawful action, i.e. an "act of

---

[5]     Florida's Anti-Terrorism Act is, in relevant part, identical to the federal Anti-Terrorism Act. *Newman v. Associated Press*, 758 F. Supp. 3d 1357, 1381 (S.D. Fla. 2024).

Gelber Schachter & Greenberg, P.A.
One Southeast Third Avenue ▪ Suite 2600 ▪ Miami, Florida 33131 ▪ www.gsgpa.com

international terrorism;" (2) the requisite mental state, and (3) causation."). At the outset, it must be noted that the Complaint lacks clarity as to whether Plaintiffs are alleging primary or secondary liability against President Rodriguez. *Id.* at 1314 (explaining that primary liability requires that the defendant have committed an act of international terrorism and secondary liability requires that the plaintiff provide material support with knowledge that the support would be used to carry out terrorism-related crimes). Regardless, the Complaint offers nothing more than conclusory language to establish the first and second element, which are wholly insufficient to sustain Plaintiffs' burden. *Id.* at 1315 (explaining that, in evaluating an ATA claim, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause of action elements"). On these elements, Plaintiffs allege the following:

> Defendants violated the federal Anti-Terrorism Act ("ATA") [or Florida ATA] by providing material support for the terrorism committed by Maduro.

> Defendants' provision of funds directly enabled the regime to expand and support its coercive apparatus (including the DGCIM) making politically motivated hostage-taking a foreseeable consequence.

> The Defendants' provision of material support to Maduro through the sale of narco-terrorist sales of cocaine in United States is an act of terrorism that gives rise to liability under the ATA, as is the related and laundering of profits from narco-terrorist sales of cocaine in the United States.

[ECF No. 1, ¶¶ 217-19, 243-45].

All three paragraphs are bare legal conclusions and patently insufficient to establish that President Rodriguez committed or materially assisted any terrorist act or that she possessed the requisite scienter. *Newman*, 758 F. Supp. 3d 1357 (granting motion to dismiss federal and Florida ATA claims and declining to consider the plaintiff's conclusory allegations regarding material assistance and knowledge as support for upholding the sufficiency of the claims). This Court should follow the conclusion reached in *In re Terrorist Attacks on Sept. 11, 2001*, where the court

dismissed ATA claims despite allegation that the defendant provided banking services and investments "with knowledge of the downstream support these activities provided al Qaeda" because that assertions were conclusory and purely speculative. 464 F. Supp. 2d 335, 340 (S.D.N.Y. 2006), aff'd, 714 F.3d 118 (2d Cir. 2013).

In conclusion, the allegations in support of Counts II and IV fail to provide a single factual allegation against President Rodriguez beyond general and conclusory statements such as, "she provided material support" or "she engaged in money laundering." Accordingly, both Counts must be dismissed.

### b. Count V

Count V requires Plaintiffs to establish that President Rodriguez (1) entered into a conspiracy with one or more additional parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) committed some overt act in furtherance of the conspiracy; and (4) that Plaintiffs were damaged as a result of the acts performed pursuant to the conspiracy. *Hercules Cap., Inc. v. Gittleman*, No. 16-CV-81663, 2018 WL 395489, at *24 (S.D. Fla. Jan. 12, 2018) ("The elements of a civil conspiracy are: (a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in furtherance of the conspiracy, and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy.").

Plaintiffs have offered only conclusory allegations in support of this offense. To be clear, "allegations that the co-conspirators were engaged in the same scheme . . . and a conclusory allegation of agreement at some unidentified point" does not supply sufficient facts to meet Plaintiffs' burden. *See Honig v. Kornfeld,* 339 F. Supp. 3d 1323, 1345 (S.D. Fla. 2018) (internal quotations omitted). In connection with first two elements, Plaintiffs allege only that "[a]ll of the

GELBER SCHACHTER & GREENBERG, P.A.
ONE SOUTHEAST THIRD AVENUE ▪ SUITE 2600 ▪ MIAMI, FLORIDA 33131 ▪ WWW.GSGPA.COM

Defendants agreed to the Maduro Criminal Conspiracy to perform unlawful acts including [names of various offenses]." [ECF No. 1, ¶ 249]. This is analogous to language repeatedly found to be insufficient to meet this element. *Casado v. Miami-Dade Cnty.*, 340 F. Supp. 3d 1320, 1333 (S.D. Fla. 2018) (language that defendants "agreed to fabricate evidence in order to batter, falsely arrest, and maliciously prosecute the plaintiff" were legally insufficient to support a conspiracy claim). Similarly, Plaintiffs have failed to allege that President Rodriguez committed an overt act in furtherance of the conspiracy. The only acts referenced are the purported kidnappings, which do not involve any actions by President Rodriguez. This Count too must be dismissed.

c.   *Count VI*

"In order to establish a federal civil RICO violation under § 1962(c), a plaintiff must allege four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sterling Nat'l Mortg. Co. v. Infinite Title Sols., LLC*, No. 10-22147-CIV, 2011 WL 13220625, at *4 (S.D. Fla. Mar. 3, 2011), report and recommendation adopted sub nom. *Sterling Nat. Mortg. Co. v. Infinite Title Sols., LLC*, No. 10-22147-CIV, 2011 WL 1222168 (S.D. Fla. Mar. 31, 2011). The pattern of racketeering activity element requires a plaintiff to allege that "(1) that defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrate criminal conduct of a continuing nature." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004).

In addition to pleading the existence of an enterprise, a plaintiff must plead that the defendant participated in the operation or management of that enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993); *United States v. Starrett*, 55 F.3d 1525, 1541-42 (11th Cir. 1995). This means the plaintiff must provide concrete "factual allegations as to how [each of the] individual [d]efendants played a part in directing the affairs of the enterprise." *Comcast of South Florida, II,*

GELBER SCHACHTER & GREENBERG, P.A.
ONE SOUTHEAST THIRD AVENUE ▪ SUITE 2600 ▪ MIAMI, FLORIDA 33131 ▪ WWW.GSGPA.COM

*Inc. v. Best Cable Supply, Inc.*, No. 07-22335-CIV, 2008 WL 190584, at *8 (S.D. Fla. Jan. 22, 2008) (emphasis in original; alterations in original). In other words, a RICO plaintiff must allege facts establishing "affirmative and deliberate participation" by each defendant in "the conduct of the affairs of the enterprise" by "knowingly implement[ing] and ma[king] decisions" concerning the alleged racketeering activity. *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F. 3d 1145, 1156 (11th Cir. 2006) (internal quotations omitted).

In the Complaint, Plaintiffs do not allege a single instance of affirmative and deliberate participation by President Rodriguez. As noted above, Plaintiffs fail to allege a single fact concerning an action taken by President Rodriguez. The only allegations supporting Plaintiffs' claim are legal conclusions that "Defendants" engaged in money laundering, trafficking, and other offenses. Such bare bones allegations are wholly insufficient. *Sterling Nat'l Mortg. Co.*, 2011 WL 13220625 (dismissing RICO claims because the allegations were conclusory); *Birmingham*, 2022 WL 18134962 (denying motion for default judgment on RICO claims because the allegations were conclusory). Accordingly, Count VI must be dismissed.

d.   *Count VII*

Section 1962(d) of the RICO statutes make it illegal for anyone to conspire to violate one of the substantive provisions of RICO, including § 1962(c). 18 U.S.C. § 1962(d*); Kivisto v. Miller, Canfield, Paddock and Stone, PLC*, No. 10-12654, 2011 WL 207898, at *3 (11th Cir. 2011). A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010).

GELBER SCHACHTER & GREENBERG, P.A.
ONE SOUTHEAST THIRD AVENUE ▪ SUITE 2600 ▪ MIAMI, FLORIDA 33131 ▪ WWW.GSGPA.COM

At the outset, the Complaint is deficient because Plaintiffs fail to allege that President Rodriguez agreed to the "overall objective of the conspiracy." Indeed, Plaintiffs never even allege what the overall objective of the conspiracy was. Further, not only do Plaintiffs fail to allege that President Rodriguez agreed to commit two predicate acts, but also their conclusory allegation on this element falls short of even reciting the required element, alleging only that "[e]ach Defendant committed *at least one* overt act in furtherance of such conspiracy." [ECF No. 1, ¶ 278 (emphasis added)]. Thus, Plaintiffs fail to even parrot the requirements for a RICO conspiracy. This Count must be dismissed.

> e.  *Conclusion*

Every single Count against President Rodriguez lacks the factual foundation necessary to establish some or all of the necessary elements. Accordingly, the entire Complaint must be dismissed for failure to state a claim.

## CONCLUSION

The Complaint does not and cannot establish that President Rodriguez is liable for any of the claims alleged in the Complaint. But even before undertaking that analysis or determining whether there has been lawful and proper service, the law is crystal clear that President Rodriguez is immune from suit, and this Court therefore lacks personal jurisdiction. The Complaint must be dismissed with prejudice.

19

Dated: June 1, 2026                                  Respectfully Submitted,

/s/ Barbara R. Llanes
BARBARA R. LLANES
Florida Bar No. 1032727
bllanes@gsgpa.com
ADAM M. SCHACHTER
Florida Bar No. 647101
aschachter@gsgpa.com
DANIEL R. WALSH
Florida Bar No. 0124282
dwalsh@gsgpa.com
GELBER SCHACHTER & GREENBERG, P.A.
One Southeast Third Avenue, Suite 2600
Miami, Florida 33131
Telephone: (305) 728-0950
E-service: efilings@gsgpa.com

*Counsel for Defendant Delcy Eloina Rodriguez Gomez*

GELBER SCHACHTER & GREENBERG, P.A.
ONE SOUTHEAST THIRD AVENUE ▪ SUITE 2600 ▪ MIAMI, FLORIDA 33131 ▪ WWW.GSGPA.COM