UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-cv-23652-GAYLES

JERREL KENEMORE et al.,
Plaintiffs,
v.
NICOLÁS MADURO MOROS et al.,
Defendants.

---

**DEFENDANT ALEX SAAB'S RESPONSE TO MOTION TO LIFT STAY**

Defendant Alex Nain Saab Morán (Saab), by and through undersigned counsel, hereby opposes Plaintiffs' motion [ECF No. 83] to lift the Court's order staying the instant action and, in support of his response, states as follows:

1. The Court should deny Plaintiffs' motion to lift the stay in this case, where the Court has already decided that the stay will continue in effect pending a November 18, 2026 status conference, with defendant Saab's response to the Complaint due ten days after the stay is lifted. ECF Nos. 80, 81. Although the Plaintiffs seek to create a basis for upsetting the present scheduling of this civil case, Plaintiffs' arguments rest largely on a misunderstanding of federal *criminal* procedure and of the procedural and constitutional rights of a criminal defendant. Plaintiffs' motion also appears to be premised on the notion that if the civil case proceeds to judgment against Saab before sentencing in the criminal case, Plaintiffs would jump ahead of the forfeiture rights of the United States government, an objective that, even if it were true, would not be a basis to lift the stay. Plaintiffs' motion, filed despite acknowledging express notice that Saab intends to timely

file his own motion to continue the stay pending sentencing in his criminal case, introduces unnecessary procedural complexity and does not warrant upsetting the schedule set by the Court.

2. There is no cause to further accelerate any part of this case or to alter the current schedule. The writs Plaintiffs pursue under the Terrorism Risk Insurance Act target the remaining judgment debtors. ECF No. 82. And defendant Saab, whose counsel agreed, as a matter of litigation courtesy, to accept service on his behalf (which Plaintiffs have requested be deemed to have occurred as of October 7), further advised Plaintiffs that Saab not only opposes lifting the stay, but will timely seek to extend the stay during the pre-sentencing period of Saab's criminal case in which he maintains a Fifth Amendment privilege. Saab respectfully asks the Court to deny Plaintiffs' motion and take up scheduling at the November 18 conference. Saab will separately file his motion for a stay through sentencing.

3. Plaintiffs propose that Saab, the one defendant awaiting federal sentencing, should answer first while the remainder of the case remains stayed. A district court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). The exercise of that power "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). The Court struck that balance on September 30 and set November 18 as the point to revisit it. ECF No. 80. Plaintiffs ask the Court to reweigh it now, as to one defendant, on a record that has changed in only one respect: the judgment against that defendant has been vacated, which removes any urgency rather than creating it.

4. Nothing in Plaintiffs' motion justifies a different balance. The judgment against Saab has been vacated. ECF No. 81. There is nothing to execute against him. Plaintiffs' own contemporaneous motion for TRIA writs of execution and garnishment is aimed at the remaining

judgment debtors and, by its own terms, "does not seek relief as to" Saab. ECF No. 82 at 1 n.1. No party is taking merits discovery under the stay, and no discovery deadline is running. Plaintiffs note that Saab intends to timely seek to extend the stay through sentencing in his criminal case; thus, any suggestion that Saab intended to take any other action (such as filing a motion to dismiss or other merits action in contravention of the stay) rests on a misinterpretation of litigation courtesy by Saab's counsel in accepting service of process on Saab's behalf.

5. Lifting the stay as to one defendant in a case asserting joint-and-several conspiracy claims against numerous defendants, several of whom have appeared and moved to dismiss, ECF Nos. 27, 61, 62, would produce duplicative discovery and two scheduling tracks. The November 18 conference is the forum the Court chose to address these questions. A single schedule, set at the conference, avoids the inefficiency and inconsistency that piecemeal stay-lifting would invite.

6. Plaintiffs invoke *Ortega Trujillo v. Conover & Co. Commc'ns, Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000), and suggests that consideration of stay issues in less than a month (on November 18) would somehow be immoderate. But nothing in *Ortega Trujillo* supports such an interpretation of moderation, which is measured by scope and endpoint. A stay with a named status conference four weeks away is the definition of moderate. *See Marti v. Iberostar Hoteles Y Apartamentos S.L.*, 54 F.4th 641, 648–49 (11th Cir. 2022) (a stay is not "immoderate" if it is designed so that "its force will be spent within reasonable limits"; a stay "dependent on the complete discretion of a third party is almost definitionally indefinite") (quoting *Landis*, 299 U.S. at 257); *see also CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982). Each of those decisions vacated a stay tied to a third party's timetable with no foreseeable end. Plaintiffs' quarrel is with a checkpoint the Court reasonably chose, not with an open-ended suspension with an unforeseeable termination.

7. Saab awaits sentencing, and the Fifth Amendment rights survive his plea until sentence is imposed. Independent of the November 18 status conference, the pre-sentencing posture of the criminal case warrants a stay of civil proceedings against Saab. The factors that courts in this Circuit apply to parallel civil-criminal stays support that result. *See United States v. Pinnacle Quest Int'l*, No. 3:08-CV-136-RV-EMT, 2008 WL 4274498, at *2 (N.D. Fla. Sept. 11, 2008) (N.D. Fla. Sept. 11, 2008) (collecting the factors, including the extent to which the defendant's Fifth Amendment rights are implicated, the overlap of issues, and whether the defendant has been indicted); *Pellegrino v. Wengert*, 147 F. Supp. 3d 1379, 1381–82 (S.D. Fla. 2015) (describing the special-circumstances standard and the overlap-of-issues inquiry); *Prosper v. Martin*, 239 F. Supp. 3d 1347, 1349–50 (S.D. Fla. 2017) (granting a temporary stay pending a related criminal investigation, with periodic status reports).

8. ***Overlap of issues.*** "[T]he similarity of issues in the underlying civil and criminal actions is considered the most important threshold issue in determining whether to grant a stay." *Pellegrino*, 147 F. Supp. 3d at 1382 (citation omitted); *Pinnacle Quest*, 2008 WL 4274498, at *2. Saab disputes that the plea or proffer establishes anything about the claims pleaded here; the plea concerns a different alleged scheme, and the proffer says nothing about the captivity at the center of this Complaint or anything that would support the core theories and allegations which are threadbare as to Saab in the Complaint. Nor are Plaintiffs correct in claiming that a plea proffer is anything other than prospective until the requirements of Fed. R. Crim. P. 11 are met in open court and the plea and proffer are accepted by the presiding judge.

9. In any event, the overlap inquiry asks what ongoing litigation of this case would compel Saab to address, and Plaintiffs have supplied that answer. They intend to litigate this case on the factual proffer, which they say "go[es] directly to personal jurisdiction and the merits," and they

have mapped its paragraphs onto Complaint paragraphs 35(c) and 64. ECF No. 83 at 5–6. On Plaintiffs' own theory of the case, then, any answer or discovery from Saab would require him to speak to the very conduct that the sentencing court will weigh—and as to which Saab maintains a fundamental Fifth Amendment right against self-incrimination under *Mitchell v. United States*, 526 U.S. 314 (1999). That is the circumstance in which deferral is most warranted: where a party "under indictment for a serious offense is required to defend a civil . . . action involving the same matter." *SEC v. Dresser Indus., Inc*., 628 F.2d 1368, 1375–76 (D.C. Cir. 1980) (en banc). Courts in this District treat the *absence* of an indictment as weighing "heavily against a stay." *Pellegrino*, 147 F. Supp. 3d at 1382 (quoting *Young v. Peraza*, 2015 WL 4639736, at *2 (S.D. Fla. Aug. 4, 2015)). Saab is past the indictment stage and plea stages of the case, but awaits the most sensitive stage of all at which he faces a potential statutory maximum life sentence.

10. ***Fifth Amendment implications.*** A guilty plea is "not a waiver of the privilege at sentencing." *Mitchell*, 526 U.S. at 316. "Where the sentence has not yet been imposed a defendant may have a legitimate fear of adverse consequences from further testimony," including, as the government itself conceded in *Mitchell*, answers "that might have an adverse impact on his sentence or on his prosecution for other crimes." *Id*. at 326–27. The privilege remains intact until sentence is imposed. *Id.* at 325–26. Compelling an answer and civil discovery now puts Saab to the choice the parallel-proceedings doctrine exists to prevent. If he invokes the privilege, this Court may draw adverse inferences against him, *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc*., 561 F.3d 1298, 1304 (11th Cir. 2009), even though the sentencing court could not, *Mitchell*, 526 U.S. at 317, 327–30. If he speaks, every statement is available to the government at a sentencing where the Guidelines calculation, forfeiture, acceptance of responsibility, and his obligations under the plea agreement all remain open.

11. This is not a generalized concern. The Eleventh Circuit requires a stay "only when 'special circumstances' so require in the 'interests of justice,'" and a "blanket assertion of the privilege is an inadequate basis for the issuance of a stay." *United States v. Lot 5, Fox Grove, Alachua Cnty., Fla.*, 23 F.3d 359, 364 (11th Cir. 1994). The claimant in *Lot 5* lost because she never identified what her own testimony would supply that other witnesses could not. *Id.* at 364–65. Saab's showing is the opposite of a blanket assertion. Plaintiffs' own motion maps the proffer's paragraphs onto Complaint paragraphs 35(c) and 64, ECF No. 83 at 5, so the subjects on which an answer and discovery would compel Saab to speak have been identified with precision, by Plaintiffs, and they are the subjects of his sentencing. And the compelled act is his own: a Rule 8(b) answer must admit or deny each allegation in his name, and no other witness can supply it. That is the circumstance in which a civil proceeding, "if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination." *Dresser*, 628 F.2d at 1376.

12. A Rule 26(c) protective order would not cure the problem. *Dresser* itself identified deferring discovery or entering a protective order as a lesser measure available in some cases, 628 F.2d at 1376, but such an order, "no matter how broad its reach, provides no guarantee that compelled testimony will not somehow find its way into the government's hands"; it "may be overturned or modified," it yields to a later grand-jury subpoena, and a civil court cannot keep its proceedings "sufficiently closed to prevent inadvertent disclosure or leakage." *Andover Data Servs. v. Statistical Tabulating Corp.*, 876 F.2d 1080, 1083–84 (2d Cir. 1989) (reversing contempt order; a witness "may not be forced to answer potentially incriminating questions in reliance upon such an order, no matter how carefully crafted the order may be"). Nor do conditions on discovery reach the pleading itself. An answer must admit or deny each allegation, and an allegation not

denied is admitted. Fed. R. Civ. P. 8(b)(1)(B), (b)(6). The answer is testimony in Saab's own name, and *Mitchell* protects his silence until sentence is imposed. 526 U.S. at 325–27.

13. ***Bounded duration.*** The stay Saab seeks runs to sentencing in *United States v. Saab Moran*, No. 1:26-cr-20020-KMW, which is set for January 20, 2027, just three months away. The endpoint is a date on a federal court's calendar in this District, not the timetable of a foreign tribunal or an agency whose discretion the Court cannot foresee. *Compare Marti*, 54 F.4th at 648–49 (stay "dependent on the complete discretion of a third party is almost definitionally indefinite"), *and Ortega Trujillo*, 221 F.3d at 1264 (stay pending conclusion of Bahamian litigation and appeals indefinite), *with Pinnacle Quest*, 2008 WL 4274498, at **2–3 (staying civil case through resolution of the criminal case where the criminal case was "underway" and the issues overlapped), *and Prosper*, 239 F. Supp. 3d at 1349–50 (stay "limited in duration" to the related criminal investigation). The stay Saab proposes is narrower than either of those, and he will report to the Court within seven days of sentencing so that this case can proceed without further delay. That is short, determinate, and moderate under *Ortega Trujillo*.

14. Despite Plaintiffs' attempt to harmonize their case (involving individuals incarcerated in Venezuela while Saab was incarcerated in the United States as well as allegations of violence) with their interpretation of a plea proffer involving a distinct alleged scheme, any potential evidentiary use of the proffer presents a merits question for another day. The plea is to one count of conspiracy to launder monetary instruments under 18 U.S.C. § 1956(h) arising from a CLAP food-contract scheme. The proffer names no plaintiff in this case and admits nothing about kidnapping, hostage-taking, or the captivity at the center of this Complaint. Whatever evidentiary use Plaintiffs may one day seek to make of the proffer is a question for the merits phase under the

relevant Federal Rules of Evidence. It is not a reason to lift a stay early or to compress the response window.

15. The plea agreement's only provision addressing affirmative use of Saab's statements is a plea-breach-consequence provision, which conditionally speaks to statements that "may be introduced affirmatively by the United States against the Defendant" in proceedings then pending or later "initiated by the United States." ECF No. 83-1 at 12–13 (¶ 19(d)). Private plaintiffs' use of the proffer is a contested evidentiary question that Saab does not concede here. *See United States v. Pielago*, 135 F.3d 703, 709–10 (11th Cir. 1998) (plea and proffer agreements are construed under contract principles, and "[a]ny ambiguities in the terms of a proffer agreement should be resolved in favor of the criminal defendant"). A guilty plea carries preclusive effect only as to issues identical to the elements of the count of conviction and necessarily decided. *Matter of Raiford*, 695 F.2d 521, 523 (11th Cir. 1983) ("Under the doctrine of collateral estoppel a party is precluded from litigating an issue if (1) the identical issue has been (2) actually litigated in a prior suit which (3) could not have been decided without resolving the issue."; collecting cases); *see also Blohm v. Comm'r*, 994 F.2d 1542, 1553–54 (11th Cir. 1993). The elements of a § 1956(h) money-laundering conspiracy are not the elements of hostage-taking, ATA, or civil RICO claims, nor can the Plaintiffs use the fluidity of their theorization of a linkage to Saab to further prejudice him in the criminal case in which he and the government have reached an agreement on premises plainly distinct from the Plaintiffs' allegations.

16. Plaintiffs' remaining accusations are directed at the Court's October 5 vacatur order. Plaintiffs quite improperly claim that it is false to state that the September 8 trial date that on the criminal docket as of August 12 was the then-current trial setting. There was no plea until September 15. Signing a plea proffer is an antecedent to a plea, but courts hold parties' feet to the

fire with trial settings, and a plea is not a plea until it is entered notwithstanding any third party interest in rushing to judgment. Notably, even an entered plea is, under Fed. R. Crim. P. 11(d)(1), subject to withdrawal before the court accepts it "for any reason or no reason." Whatever Plaintiffs make of that timeline, their line of attack against the October 5 order vacating the default is unwarranted.

17. Plaintiffs identify no prejudice from the current schedule for stay consideration by the Court. Plaintiffs' fear that the criminal forfeiture money judgment that runs to benefit of the United States will gain further priority as against a potential civil judgment is misplaced. Under 21 U.S.C. § 853, the priority of the criminal forfeiture judgment is retroactive to the date of the occurrence of the relevant criminal conduct. Rushing this case forward will not help Plaintiffs' effort to jump ahead of the interests of the United States. "Congress has created one—and only one—means for interested third-parties to participate in a criminal-forfeiture proceeding," the ancillary proceeding under 21 U.S.C. § 853(n). *United States v. Mar. Life Caribbean Ltd.*, 913 F.3d 1027, 1035 (11th Cir. 2019); *United States v. Davenport*, 668 F.3d 1316, 1320–21 (11th Cir. 2012) ("An ancillary proceeding constitutes the sole means by which a third-party claimant can establish entitlement to return of forfeited property."). And once an indictment alleging forfeiture is filed, no third party may "commence an action at law or equity against the United States concerning the validity of his alleged interest in the property." 21 U.S.C. § 853(k)(2). Plaintiffs' concern that the forfeiture will consume Saab's assets before they can reach them describes a race the statute does not permit them to run, whether this case is stayed or not.

18. The speculation that a post-sentencing BOP designation may move Saab out of the District does not constitute prejudice. Saab litigates through counsel in Miami wherever he is

designated. Four weeks to a status conference the Court has already set is not hardship. It is the schedule.

**CONCLUSION**

For the foregoing reasons, Saab respectfully requests that the Court:

(1) Deny Plaintiffs' Motion to Lift the Stay (ECF No. 83) and address scheduling as to Saab at the November 18, 2026 status conference;

(2) In the alternative, if the Court lifts the stay as to Saab, make the lift effective at the November 18 conference and give Saab twenty (20) days from the date the stay is lifted for his response to the Complaint, expressly including motions under Rule 12 and his motion for a stay pending sentencing;

(3) Decline the proposed order at ECF No. 83-3, which rests on a conferral that Plaintiffs' own certificate describes differently and which is inconsistent with the Court's October 5, 2026 order at ECF No. 81.

Dated: October 21, 2026

Respectfully submitted,

/s/ *Richard C. Klugh*

**Richard C. Klugh**
Fla. Bar No. 305294
40 N.W. 3rd Street, PH1
Miami, Florida 33128
Tel. (305) 536-1191
Fax (786) 706-0675
E-Mail rk@klughlaw.com

*Counsel for Defendant*
*Alex Nain Saab Morán*